# Tallassee Falls Manufacturing Co. v. Western Railway of Alabama.

*Action against a Common Carrier for Failure to deliver Goods.*

1. *Action against common carrier; when ex contractu.*—When an action is brought against a common carrier to recover for loss occasioned by failure to perform a contract of carriage, and the complaint counts upon a bill of lading, and avers a consideration and a promise on the part of the defendant to carry out the contract of affreightment, such action is one *ex contractu* and not *ex delicto.*

2. *Same; what necessary to maintain suit.*—Where one sues a common carrier to recover damages for injury or loss, whether the action be based on a breach of duty or a contract of shipment, it is necessary for the plaintiff to show a delivery of the goods to the carrier, and an undertaking or contract on its part, either express or implied, to transport the goods as alleged, and the failure to perform the contract or its duty according to the contract.

3. *Same; bill of lading the best evidence of the contract between the parties.*—In the transportation of freight, the bill of lading, when executed and delivered, embodies the contract between the shipper and the carrier, and is to be taken as the sole evidence of the final agrement between the parties, by which their duties and liabilities must be regulated; and parol evidence is inadmissible to vary its terms or legal import.

4. *Same; same; when delivery of goods can not be proved by parol.* In an action against a common carrier to recover damages for the failure to safely deliver goods as contracted, where it is shown that the goods were shipped under a contract evidenced by a bill of lading, which was issued by the defendant to the plaintiff, in order to maintain the suit it is not enough simply to prove the delivery to the carrier and failure to deliver to the consignee, but it is necessary that the bill of lading be proved and introduced in evidence; the bill of lading itself being the best evidence of the contract of shipment.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

This action was brought against the appellee, the Western Railway of Alabama, by the appellant, the Tallassee Falls Manufacturing Company, which sued

for the use of certain insurance companies, which are alleged to have been subrogated to all of its rights.   The complaint contained two counts, the first, in the statutory form, "On a bill of lading of a common carrier," (p. 793 of the Code of 1886), and the second claimed $10,000 as damages for the breach of a contract between plaintiff and defendant, wherein, in October, 1895, the defendant received of plaintiff 200 bales of cotton as a common carrier to be carried by it to Cowles, a station on the line of its railroad, and there safely kept until the same was delivered to plaintiff, and plaintiff alleges that defendant violated its contract in that it did not safely keep the cotton as it contracted to do, but negligently permitted the same to be burned and destroyed by fire while in its custody at Cowles station.   The defendant pleaded the general issue and several other pleas, to a number of which demurrers were sustained, which are not material as the case comes before the court.

The plaintiff introduced as its first witness one Micou, its secretary, who testified that about the 9th or 10th of October, 1895, he delivered 437 bales of cotton to the defendant company at the depot of the defendant in the city of Montgomery for shipment to the plaintiff company at Cowles station ; that on the 18th day of October he was at Cowles station and part of the 437 bales of cotton which he had shipped over the defendant's line to that station took fire and burned ; 123 bales being entirely destroyed.   This witness further testified to the custom of the plaintiff for the last 20 years, in shipping cotton over the defendant's line to the station at Cowles, and to the custom of delivering the cotton so shipped to the plaintiff, it being hauled off from the station by wagons to the plaintiff's mill, which was 6 miles distant from Cowles station.

In the early part of the examination of this witness, the defendant objected to the evidence about the shipment and burning of the cotton, on the ground that there was no proof that there was a contract and because plaintiff did not offer its bill of lading.  Plaintiff's counsel replied that he did not propose to offer it ; that he had it in court and defendant might offer it if he wished.  Defendant's counsel then asked the witness if he got a bill of lading, to which the witness answered

yes. Defendant then renewed its objection, but the court.overruled it.

On re-direct examination the witness again testified that he delivered the cotton at the defendant's depot in Montgomery and accepted its bill of lading. This witness and two other witnesses testified to facts which tended to show that the fire could not have originated from any other source than the engine on the defendant's road, and that it did so originate.

It was admitted that the defendant was a common carrier, engaged in the carriage of freight and passengers between the city of Montgomery and Cowles station and beyond. This was all the evidence, and at this point the plaintiff rested. Thereupon the defendant moved to exclude all the testimony of the witness Micou, on the grounds (1) that it was irrelevant; (2) that it was shown that the contract sued on was in writing; (3) that the evidence did not tend to support the allegations of the complaint; (4) that it was illegal; and (5) that it .was not the best, but secondary evidence. The court granted the motion and the plaintiff excepted, and thereupon, on account of the ruling, took a non-suit with bill of exceptions, with leave to move to set aside the' same in the Supreme Court. The appellant now moves to set aside the non-suit, and the sole basis of the motion is the error of the court below in excluding the testimony of Micou.

TOMPKINS & TROY, for appellant.—In the Codes of 1852, 1867, and 1876, form No. 15 was entitled "Against a common carrier," while in the present Code it is entitled "On a bill of lading of a common carrier." We do not apprehend that it will be argued that the pleading prescribed in the identical words in all the Codes can have a different meaning now from what it had in the Codes previous to the present one. If otherwise, we would be giving to a title assigned by the commissioner of the Code greater effect than the court gives to titles of acts of the legislature assigned to them and changes in phraseology by the legislature itself.—*E. T., V. & G. R. R. Co. v. Hughes*, 76 Ala. 592; *Bradley v. State*, 69 Ala. 322; *Landford v. Dunklin*, 71 Ala. 608.

It is to be noted that in this form the right of action is for a failure to deliver, for loss or destruction, and

not for mere injury to the goods. Where goods are actually delivered, but come to the consignee in damaged condition, this form of action cannot be maintained. *A. G. S. R. R. Co. v. Grabfelder,* 83 Ala. 200 ; *S. & N. R. R. Co. v. Wilson,* 78 Ala. 587.

It was not incumbent on plaintiff to prove an express contract, written or verbal, with the defendant in this case. It was enough simply to prove delivery to the carrier and failure to deliver to the consignee. The action might have been maintained by the proof of a written contract, but that was not necessary. In the proof of delivery it was not necessary to offer the bill of lading. The *fact of delivery* to the carrier, receipt by it, and *not the receipt,* was the matter proof of which plaintiff was required to make, and did make by Micou. It is doubtless true that the bill of lading was competent evidence of the fact; but it was no more primary evidence of the delivery than the oral testimony of Micou to that effect.—*L. & N. R. R. Co. v. McGuire,* 79 Ala. 395 ; *M. & E. Railway Co. v. Kolb,* 73 Ala. 396 ; *Newell v. Nixon,* 4 Wall. 572.

GEORGE P. HARRISON, *contra.*—A bill of lading, in so far as it is evidence of a contract between the parties, stands on the footing of all other contracts in writing, and can not be contradicted or varied by parol evidence. *Ga. Pac. R. Co. v. Propst,* 90 Ala. 1 ; *L. & N. R. R. Co. v. Orr,* 94 Ala. 602 ; *Cox v. Peterson,* 30 Ala. 608 ; *Cole v. Spann,* 13 Ala. 537 ; *A. G. S. R. R. Co. v. Mount Vernon Co.,* 84 Ala. 173 ; 35 Amer. & Eng. R. R. Cases, 657.

HARALSON, J.—1. The first count in the complaint follows form 15, p. 793, of the Code of 1886, for a suit "On a bill of lading of a common carrier." Hutchinson in his work on Carriers, section 744, referring to the character of this action, states, that in former times it was a very perplexing question how the form of the action,—whether in case or assumpsit,—should be distinguished, and adds, that it seems "to be finally settled, that while the allegation of a promise in the declaration will not be sufficient to impress upon it the distinctive feature of a declaration upon the contract, because the words 'agreed,' 'undertook,' or even the more significant word 'promised,' must be treated as no more than in-

ducement to the duty imposed by the common law, yet if there be an averment of a promise and a consideration, the declaration must be construed to be upon the contract, and not for the breach of duty." The count under consideration alleges both a consideration and a promise. In keeping with the principles thus announced, we have held, more than once, and latterly, that this form of action is one *ex contractu* and not *ex delicto*, and to such conclusion we adhere.—*Holland v. Southern Express Co.*, 114 Ala. 128; *McDaniel v. Johnston*, 110 Ala. 526; *McCarthy v. L. & N. R. R. Co.*, 102 Ala. 193; *A. G. S. R. R. Co. v. Eichofer*, 100 Ala. 227.

2. The second count declares on the contract itself, and cannot be pretended to be in case. Such a count could not be joined with one in *assumpsit*.—3 Brick. Dig. 704, § 57.

3. Where one sues a common carrier by reason of the default of the latter, whereby an injury or loss has happened to him, whether the action be based on a breach of duty or upon the contract, it is "necessary for the plaintiff to show a delivery of the goods to him, an undertaking or contract on his part, either express or implied, to transport them as alleged, and a failure to perform the contract or his duty according to his understanding."—Hutchinson on Carriers, § 795. Again, the same author says, "The contract with the carrier may be express or implied. If it be express, it should be proven, whether the action be in tort or *assumpsit*," etc. § 762.

Mr. Greenleaf on the same subject says: "Oral proof cannot be substituted for the *written evidence of any contract, which the parties have put in writing*. Here, the written instrument may be regarded, in some measures, as the ultimate fact to be proved, especially in negotiable securities; and in all cases of written contracts, the writing is tacitly agreed upon, by the parties themselves, as the only repository and the appropriate evidence of their agreement. The written contract is not collateral, but is of the very essence of the transaction."—Greenl. Ev., § 87.

"In the transportation of freight [as this court has said in *L. & N. R. R. Co. v. Fulgham*, 91 Ala. 556], the bill of lading embodies the contract between the shipper and the carrier, and when delivered by the carrier and

[Hess v. Rudder.]

received by the shipper, its terms, stipulations and conditions- are as binding on the parties thereto, as are the terms, stipulations and conditions of any other written contract. A bill of lading is, therefore, to be taken as the sole evidence of the final agreement of the parties, by which their duties and liabilities must be regulated, and parol evidence is inadmissible to vary its terms or legal import."

It is manifest from what has been said, that the lower court did not err in excluding the evidence offered by the plaintiff.

Affirmed.