[Nashville, Chattanooga & St. Louis Railway Co. v. Parker & Co.]

# Nashville, Chattanooga & St. Louis Railway Co. *v.* Parker & Co.

## *Action against Common Carrier.*

| | |
|---|---|
| 123 | 683 |
| 131 | 261 |
| 123 | 683 |
| 132 | 539 |
| 123 | 683 |
| o135 | 510 |
| 123 | 683 |
| a137 | 600 |
| 123 | 683 |
| 138 | 641 |
| 123 | 683 |
| 142 | 484 |
| 142 | 709 |
| 123 | 683 |
| c143 | 311 |

1. *Pleading and practice; when ruling on demurrer not revisable.* Where a demurrer to a complaint, containing but one count, is sustained, and the plaintiff amends by filing another count upon which trial is had and judgment rendered for the plaintiff, the ruling on demurrer to the original complaint is not revisable on an appeal taken by the defendant.

2. *Amendment to complaint; when permissibility not raised by demurrer*—Where an action on the case was brought and demurrer to the complaint containing only one count was sustained, and plaintiff filed an additional count upon a contract, the question of the permissibility of the amendment, after the first count was out, can not be properly raised by demurrer; it can only be raised by objection to the allowance of the amendment or by motion to strike.

3. *Negligence; when a legal implication.*—Where a complaint is brought in the form prescribed by the Code, against a common carrier, fault on the carrier's part, where fault is essential to fix the liability of the carrier, is a legal implication from the words of the form, though they do not expressly aver negligence or fault; and demurrer will not lie on the ground that negligence is not alleged.

4. *Evidence of special contract; when admissible under general issue.*—In an action against a common carrier for the alleged breach of a contract of affreightment, in not delivering freight uninjured, proof of a special contract is admissible under the general issue only for the purpose of denying or disproving the plaintiff's cause of action as stated. If the defendant wishes to offer the contract for other purposes, such as to avail himself of exemptions or particular terms in the contract, he must plead such matters specially; for it is only under such a plea that the special contract can be offered or proved for such purpose.

5. *Special plea; when sufficient in averments.*—While a special plea in an action on a contract is not necessary to permit proof of special contract merely in denial of the cause of action stated, as such proof is admissible under the general

[Nashville, Chattanooga & St. Louis Railway Co. v. Parker & Co.]

issue, if it seeks to interpose in bar afnrmative defenses grow-
ing out of the contract itself, and necessarily goes beyond the
scope of the issue under the plea of the general issue, it is
insufficient if it tenders the mere naked legal conclusions of
the pleader as to the construction of the contract, without
in any manner stating or referring to the substance or nature
of the contract, the consideration on which it was based, or
in any wise indicating what terms of the contract relieved
the defendant from liability; and if it gives no facts by which
the court can determine the validity of the contract, or the
correctness of the construction placed upon it by the pleader,
or how or in what manner anything done or omitted to be
done under "the contract" could affect or vary the rights of
the parties, it is likewise insufficient.

6. *Action against common carrier; effect of unloading stock against
shipper's direction.*—Where a party makes a special contract
with a railroad company for the transportation of stock,
agreeing therein to load and unload the stock at his risk, and
the company unloaded them during the transit against the
direction of the shipper, and, one of the horses shipped was
injured in reloading, it is *held* in a suit against the company
by the shipper, for injury to said horse: 1. The company
had the right to unload without the, consent of the shipper,
if it was necessary to do so to avoid keeping the stock on
the cars beyond the legal limit of time; 2. Whether or not
the company was liable for injury occurring under such cir-
cumstances depends on a variety of considerations to be de-
termined by the jury; and, hence, 3. A charge asked by plain-
tiff that the jury should find for·him if the stock was unloaded
without his consent, is erroneous.

7. *Statute of limitations; effect of improperly taking issue on plea*
Where a suit is brought against a common carrier upon
his common law liability, the plea of the statute of limitations
of one year is a good answer to the complaint, if issue is taken
upon it, although if the plea had been demurred to it would
have been held bad; and upon proof of the averments of such
plea, the defendant is entitled to the general affirmative
·charge in its behalf.

8. *Evidence; presentation of bill for feeding stock; when admissi-
ble.*—Where, in an action against a railroad company for in-
jury to stock while being transported, it is a ques-
tion where and how the injury complained of occur-
red, and also whether , if from unloading during the
transit, the unloading was by consent of plaintiff, it
is. competent for the defendant to prove that, at the

[Nashville, Chattanooga & St. Louis Railway Co. v. Parker & Co.]

termination of the transportation, it presented to plaintiff a bill for feeding at an intermediate station and that payment was made or refused; such evidence having a tendency to show the place of the injury, and whether, in fact, the stock were unloaded without the consent of the shipper.

9. *Records; when not evidence.*—It is no eror to refuse to permit a railroad company, sued for injury to stock during transportation by being unloaded and fed while in transit, to introduce the records made of the condition of the seals put on the cars at the beginning of the transit and of their condition when the stock was taken off; such records not being the best evidence of the facts, which could be proved by the person affixing the seals from direct personal knowledge, independent of the records.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. J. A. BILBRO.

This action was brought by C. C. Parker & Co., a partnership composed of C. C. Parker and E. B. Ray, against the Nashville, Chattanooga & St. Louis Railway. The complaint as originally filed contained only one count, which was in words and figures as follows: "The plaintiffs claim of defendant the sum of forty-nine and fifty hundredths dollars damages for the negligent injury of one black horse received by defendant at Huntsville, Alabama, as common carrier, to be delivered to the plaintiffs at Albertville, Alabama, for a reward." To this complaint the defendant demurred, which demurrers were sustained. Thereupon the plaintiffs added a new count which was as follows: 2. "The plaintiff claims of defendants forty-nine and 20-100 dollars damages for the injury of one black horse received by defendant as a common carrier to be delivered by defendant to the plaintiff at Albertville, Ala., for a reward, and that said injury was received by said horse while in the possession of defendant as such common carrier and during the transit." To this new count of the complaint the defendant demurred upon the ground that it fails to aver that the injury was caused by any fault or negligence on the part of the defendant, or any of its agents or employés. This demurrer was overruled, to which ruling the defendant duly excepted. Thereupon defendant filed the following pleas: "1st. That it is not guilty. 2d. That the injury to the horse, if any, was not such injury as this defend-

ant is responsible for at law, or under its contract with the plaintiffs from Huntsville to Albertville, by way of That the plaintiff can not recover in this case because the cause of action is barred by the statute of limitations of one year, the amended complaint being filed on the 6th day of April, 1899." The plaintiffs moved the court to strike the 2d plea from the file, because the defense sought to be interposed thereby could be shown under the plea of the general issue. This motion was sustained, and the plea was stricken from the file, and to this ruling the defendant duly excepted.

The evidence showed that there had been shipped to the plaintiffs from Huntsville to Albertville, by way of Chattanooga, Tennessee, a car load of horses, among which was the horse alleged in the complaint to have been injured. It was shown that the car left Huntsville at 3 p. m. on October 22, 1896, and reached Chattanooga at 7 p. m. the same night and remained there over night, and then left the next morning and reached its destination at Albertville on the 23d of October about 7 p. m., after having been in transit for about 27 hours. The stock was shipped under a limited contract, signed by the shipper in consideration of the railroad's giving him a reduced rate and free transportation for his agent. It was shown that the car in which the stock was shipped had no trough for feeding or watering the stock. The only evidence as to how the injury to the horse occurred was that of J. E. Ray, who shipped the stock and agreed by the contract to go along with them. He testified that when he reached Chattanooga, he took a lantern and went to a man who was pointed out to him as the yard-master of the defendant railway, and told him that he did not want the stock unloaded. He then left and did not see the stock until the next morning, that he went down before breakfast and found them out of the car feeding in the stock yard, and that the horse was then all right, that he went back to his breakfast, and on returning found the stock back in the car on defendant's track, and an engine of defendant attached to the car. and upon examining the stock, he found that the horse was badly injured and bleeding, being cut

on the inside of the right hind leg. He examined the bridge by which the stock was reloaded on the car, and found fresh blood and hair on the bridge, indicating that the horse was injured in reloading at Chattanooga. He failed to look after the stock according to the terms of the contract, and was not present when the horse was injured. In trying to give an explanation as to how the horse was, in his opinion, injured, the witness said: "He thought the horse's foot *must have slipped as he was being loaded,* or that the apron was too short, which caused the injury." Upon the further examination of said J. E. Ray as a witness, he was asked by the defendant if he did not pay for the loading, reloading and feeding of the stock at Chattanooga. The plaintiffs objected to this question, because it called for illegal and irrelevant testimony. The court sustained the objection and the defendant duly excepted. The defendant proved by the conductor who was in charge of the train in which the car load of stock was a part, that when it reached its destination the seal of the shipping station was not broken. The defendant then offered to prove by the conductor whose duty it was to take a record of the car, that he kept such record and that the original record was in court. Thereupon the defendant offered to introduce such record in evidence. The plaintiffs objected to the introduction of such record in evidence, the court sustained the objection, and the defendant duly excepted.

In rebuttal the plaintiffs introduced J. E. Ray as a witness, who testified that he was present when the stock was unloaded at Albertville, and that when they were about to unload the stock the agent of the defendant presented a bill for twelve dollars for feeding the stock at Chattanooga, which bill he refused to pay. The defendant objected to this evidence, and moved the court to exclude it from the jury, because it was illegal, irrelevant and not in rebuttal of any testimony that had been introduced. The court overruled this objection, and to this ruling the defendant duly excepted.

Upon the introduction of all the evidence, the court at the request of the plaintiffs gave to the jury the following written charges: (1) "The court charges the

jury that if they believe the evidence in this case you must find that the horse described in the complaint was the property of the plaintiffs." (2) "The court charges the jury that if they find that defendant undertook to unload and feed and reload the horse described in the complaint without the instruction or authority of the shipper, J. E. Ray, or the consignees Parker & Co., and in doing so the horse was injured, defendants would be liable for the injury no matter whether it was caused by the defendant's negligence or not, and if you find these to be facts, your verdict must be for the plaintiffs." To each of these charges the defendant separately excepted, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "If the jury believe from the evidence that the injury occurred to the horse by the horse slipping on the bridge as he was reloaded, they must find for the defendant."

There were verdict and judgment for the plaintiffs, assessing their damages at twenty-five dollars. The defendant appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

OSCAR R. HUNDLEY, for appellant.—The demurrer to the new count should have been sustained.—*S. & N. R. R. Co. v. Henlien,* 52 Ala. 606; *A. G. S. R. R. Co. v. Little,* 71 Ala. 611; 4 Elliott on Railroads, § 1545.

The court erred in striking the second plea.—3 Encyc. of Pl. & Prac. 856; *Cushman v. Hayes,* 46 Ill. 155; *Wabash, &c. R. R. Co. v. Black,* 11 Ill. App. 465; *Howlan v. Wallace,* 81 Ala. 238.

The affirmative charge for the defendants should have been given.—*Tallassee Falls Manfg. Co. v. Western R. R. Co.,* 117 Ala. 520; *E. T. V. & G. R. R. Co. v. Johnson,* 75 Ala. 596; *Western R. Co. v. Harwell,* 91 Ala. 340; *James v. Vicors,* 119 Ala. 32; *A. G. S. R. R. Co. v. Smith,* 81 Ala. 229.

Amendment made new cause of action.—*Holland v. Southern Express Co.,* 114 Ala. 128; *McDaniel v. Johnston,* 110 Ala. 526.

[Nashville, Chattanooga & St. Louis Railway Co. v. Parker & Co.]

The charges given at the request of the plaintiff were erroneous.—2 Jaggard on Torts, 1074; *McCarthy v. L. & N. R. R. Co.,* 102 Ala. 193.

O. D. STREET, *contra.*—Special privileges to carrier must be specially pleaded.—*Howland v. Wallace,* 81 Ala. 238; *K. C. M. & B. R. R. Co. v. Crocker,* 95 Ala. 427; *Petty v. Dill,* 53 Ala. 641.

Statute of limitations of one year not applicable.— *Holland v. Southern Express Co.,* 114 Ala. 128; *Sublett v. Hodges,* 88 Ala. 491; *Ricketts v. Weeden,* 64 Ala. 548; *Stringer v. Waters,* 63 Ala. 365.

Plaintiffs were entitled to affirmative charge, and if there was any error in rulings of the court, they were errors without injury.—*L. & N. R. R. Co. v. Touart,* 97 Ala. 514.

TYSON, J.—The original complaint was *ex delicto* and in case. It counted directly on the "negligent injury" of the animal while in the possession of the carrier, and not upon the implied contract under which the horse was received. The count added, after the demurrer was sustained to the original complaint, is upon the contract with the carrier, and seeks a recovery because of its non-performance—not delivering the horse uninjured. It is necessarily *ex contractu.*—*Tallassee Falls Mfg. Co. v. Western R'y. of Ala.,* 117 Ala. 520.

The ruling on demurrer to the original complaint is not revisable on this appeal. The question of the permissibility of the amendment after the first count was out was not raised by the demurrer. It could only have been raised by objection to its allowance or by motion to strike out.

The added count is brought in the form prescribed by the Code.—Form 15 and note, Code, p 946. Fault on the carrier's part, where fault is essential to fix the liability of the carrier, is a legal implication from the words of the form, though they do not expressly aver negligence or fault; and the demurrer on the ground that negligence was not alleged was therefore not well taken.

The general issue under the Code only puts in issue the material allegations of the complaint. One of the ma-

terial allegations of the complaint—a necessary legal implication from the words of the Code form—is that the defendant's undertaking was one with all the liabilities which the law implies from the delivery of freight to a carrier, to be transported for a reward.    Under the general issue, therefore, denial of the contract declared on may be made, by proving the real contract between the parties, if it be different from that declared on.    Proof of a special contract is admissible under the general issue, only for the purpose of denying and disproving the plaintiff's cause of action as stated.    Under that plea the special contract can be offered and proved only for the purpose of denial, and raises no other issue.    If the defendant wishes to offer the contract for other purposes, as to avail himself of exemptions or particular terms in the contract, he must plead such matters specially; for it is only under such a plea that the special contract can be offered or proved for such purpose.

Defendant's special plea was not necessary to permit proof of special contract merely in denial of the cause of action stated.    Such proof, as we have seen, was admissible under the general issue.  The plea, however, plainly intended more than the denial of the cause of action.    It sought to interpose in bar affirmative defenses growing out of the contract itself, and necessarily went beyond the scope of the issues under the plea of the general issue. The defense attempted was a proper matter of special plea, not available under the general issue; and if the matters relied on had been properly set out in the plea the court would have erred in striking it or sustaining a demurrer.    The plea, however, is plainly insufficient, and the matter relied on so loosely stated that it was subject to motion to strike.    It tendered the mere naked legal conclusion of the pleader as to the construction of the contract, under which the horses were shipped, as a defense to the action, without in any manner stating or referring to the substance or nature of the contract, the consideration on which it was based, or in anywise indicating what terms of the contract relieved the defendant from liability; and it gave no facts by which the court could determine the validity of the contract, or the cor-

rectness of the construction placed upon it by the pleader, or how or in what manner anything done or omitted to be done under "the contract" could affect or vary the rights of the parties.

The horse, the injury to which is the subject of this suit, was shipped with others under a special contract with the defendant, signed by the plaintiff and defendant's agent. In consideration of a pass and reduced rates, it was agreed, among other things, that the plaintiff or his agent would "load and unload the stock at his own risk, and feed, water and attend the same at his own risk and expense, while it is in the stock yards awaiting shipment, and while on the cars, or at feeding and transfer points, or where it may be unloaded for any purpose." It was also a term of the contract that in event the owner went on a passenger train, he must provide an agent to accompany the stock on the freight train, etc. The evidence shows that the horse was injured by being reloaded at Chattanooga, where the stock had been unloaded for the purpose of feeding them. The agent of the plaintiff testified that "he bought the stock in Texas, and then shipped it to Huntsville, and at that point, reshipped over defendant's road to Albertville." How long the stock had been upon the cars when reshipped at Huntsville, does not appear. It does appear that they were placed in a car at that point on the 22d day of October, and that the train left at 3 p. m. that day. They were taken out to be fed next morning at Chattanooga, and reached Albertville about 7 p. m. on the evening of October 24th. The plaintiff's agent testified that he notified a person, who was pointed out to him as the yardmaster at Chattanooga, that he did not wish the stock unloaded.

This stock had probably been confined upon the cars, without food, twenty-four hours at the time they were unloaded at Chattanooga, and it is a fair inference from the testimony that if not unloaded and fed there, they might be forced to go without food and water and remain on the cars for over twenty-eight hours, by the time they reached their destination at Albertville—thus subjecting the carrier to the penalty prescribed by the revised statutes of the United States. If this were so, the de-

fendant had the right to unload and feed the stock at Chattanooga, whether authorized by plaintiff or not, or even against his protest. Whether or not defendant would be liable for injury to the stock in reloading it at Chattanooga, without the consent of the plaintiff, depends upon a variety of considerations. How long had they been confined on the cars, without food, at the time they were fed at Chattanooga? Was it reasonable and proper to feed them there? If the stock had not been fed at Chattanooga, were there facilities elsewhere on the journey to Albertville where they could be properly unloaded and fed, and at what time? How and in what manner was the injury inflicted? Was due care observed by defendant's servants in putting the horse back on the train, and were there proper facilities and appliances for that purpose at Chattanooga? The charge instructing the jury at plaintiff's instance, to find for the plaintiff, if the stock was unloaded at Chattanooga without his consent, was faulty in all these respects.

This charge was also faulty in that it ignored the terms of the special contract, which was offered generally and without objection, and required the shipper to water, feed and attend to the stock at his own risk. If it was proper to unload and feed the stock at Chattanooga; if defendant had proper appliances there and exercised due care in unloading and loading the horses, and subjected them to no unnecessary delay in transportation; and if the injury was one of the risks of loading and unloading, the defendant would not be liable for injury to the horse, under such circumstances. The injury to the horse unexplained put upon the defendant the burden of showing that it happened without fault on its part, and from one of the risks of loading and unloading for the purpose of feeding. The jury could look at all the facts, and whether or not the shipper or his agents remained with the stock; and it was for the jury to say in view of all the evidence whether the defendant was liable. Liability could not be predicated upon the sole consideration that the horses were unloaded and fed without the consent of the shipper or his agents.—*S. & N. A. R. R. Co. v. Henlein,* 52 Ala. 615; *Cent. R. R. & B. Co. v. Smith & Chastain,* 85 Ala. 47.

The court also erred in not giving the affirmative charge requested by the defendant. The suit was upon the common law liability of the carrier. The evidence without dispute, showed a special contract, materially varying the common law liability of the carrier. The plea of the statute of limitations of one year was also interposed, and issue taken upon it. It thus became a good answer to the additional count of the complaint, although if the plea had been demurred to, it would have been held bad; since that count is *ex contractu*, and not subject to the statute of limitations of one year.

The court committed no error in refusing to charge that "if the injury occurred by the horse slipping on the bridge as he was reloaded, the verdict should be for the defendant." This charge ignored all questions as to the propriety of unloading the horse at the time, or the good order and extent of the facilities for reloading, and whether due care was observed by defendant's servants in so doing.

There was no error in admitting proof that the bill for feeding the stock at Chattanooga was presented at Albertville, and refused to be paid. So far as the testimony was objectionable in not being in rebuttal of testimony presented by the plaintiff, that was matter in the discretion of the lower court. The evidence had a tendency to locate where the injury occurred, and was certainly competent in view of the testimony of the witness Martin who was in charge of the train which brought the car of horses from Huntsville, and saw it unloaded, that the seal of the Huntsville station was on the car, and that those seals were unbroken, etc.

The defendant should have been permitted to prove by the witness Ray whether or not he paid for loading and reloading and feeding of the stock at Chattanooga. Plaintiff's testimony showed that he had not consented to the unloading of the stock at that point. If he paid the bill therefor, it would be evidence, however slight, which the jury might consider in determining, in connection with the other evidence, whether, in fact, the horses were unloaded without his consent. He testified that after breakfast he saw the horses had been unloaded and were feeding in the stock yard, and is silent as to whether he made any objections at that time.

[Thomason *et al* v. Silvey & Co.]

There was no error in refusing to allow the introduction of the records made by the witness Martin as to the seals put upon the car at Huntsville, and their condition where the stock was taken off. These records were not offered for the purpose of refreshing the memory of the witness Martin; nor were they the best evidence of the facts, which were proven by Martin himself from direct personal knowledge. independent of the records.

The judgment must be reversed and the cause remanded.