# Western Ry. of Alabama *v.* Hart, *et al.*

*Action for Damages for Failure to Deliver Goods.*

(Decided April 29, 1909. 49 South. 371.)

1. *Action; Joinder; Ex Contractu and Ex Delicto.*—Section 5329, Code 1907, provides for the joining in one complaint of counts ex contractu and ex delicto, where they relate to the same transaction; section 10, Code 1907, expressly provides that the sections of the Code shall apply to changes in forms of remedy or defense and to

[Western Railway of Alabama v. Hart, et al.]

provisions authorizing amendments to pleading in civil cases after its adoption; hence, a complaint filed before the adoption of the Code but amended after the adoption of the Code, may join counts ex contractu and ex delicto, if relating to the same transaction.

2. *Same; Breach of Contract of Carriage; Contract or Tort.*—In an action against a carrier counts which allege that the plaintiff delivered to the defendant for shipment a consignment of oranges, that the carrier transported them in a refrigerator car, equipped with a ventilating apparatus, but failed to use the apparatus, although the state of the weather required it to preserve the fruit, and as a result, the fruit was damaged, state an action on the contract for a failure to safely transport the fruit, the negligence alleged being descriptive of the breach.

3. *Same.*—The allegation of a promise in a complaint is not sufficient to render it a complaint upon the contract of shipment, since the words, "agreed," "undertook," or even "promised" are no more than an inducement to the duty imposed by the common law; but if there had been an averment of a promise and consideration, the complaint would be upon the contract, and not for the breach of a duty.

4. *Limitation of Action; Breach of Contract.*—Where the count alleged that the carrier undertook as a warehouseman and for a reward, and for the benefit of the plaintiff, to do a particular thing, is an action on the contract, and not in case, and hence not barred by the statute of limitations of one year.

5. *Pleading; Pleas; Sufficiency.*—Pleas which are evasive and do not traverse the complaint, are bad.

6. *Carriers; Goods; Delay in Delivery.*—Where the owner did not prevent the carrier from receiving the information, or from obtaining the way bill, the fact that the carrier received the goods from a connecting line, and failed to get a way bill, or other information, as to whom the goods were consigned, whether through its own negligence or not, would not relieve it from the duty to safely transport the goods.

7. *Same.*—In an action against a carrier for damage to fruit from delay in delivery, where shipped under a contract, limiting the carrier's liability for loss from decay caused by the weather, and arising during the ordinary time, and method of transportation, a plea which alleges the limitation, and that the damages were caused by decay or changes in the weather, but which did not negative the carrier's negligence, as a proximate cause of decay, was bad.

8. *Same.*—A plea which attempts to set up contributory negligence of the consignee for a failure to call for the fruit for four days after its arrival, but which avers no duty on the consignee to do so, nor any notice of the arrival, nor any facts that would relieve the carrier from giving such notice, is insufficient as a defense to an action for damages for delay in delivering the fruit.

9. *Same.*—As the failure to present the bill of lading and call for the fruit might have been due to a want of notice, a plea which avers the failure of the consignee to present the bill of lading and call for the fruit within a reasonable time as the proximate cause of the damage of the fruit, and that the bill required notice of the arrival of the fruit, is bad because not averring that notice of its arrival was given.

*10. Same; Perishable Goods; Duty to Use Appliances.*—When a carrier undertakes to transport perishable goods in cars constructed and operated for that purpose, and having appliances for ventilation, etc., it undertakes the contractual duty to so handle the cars as to make all the appliances available for the preservation and safe transportation of goods, there being nothing in the contract to the contrary.

*11. Custom and Usage; Effect as Evidence.*—Custom is only evidence of facts, and not of law in cases where the contract is in language rendering it ambiguous, technical or of doubtful meaning, or it is silent upon some material inquiry.

*12. Same; Necessary Element of Custom.*—To establish a custom and make it operative in a particular case, the custom must be reasonable, not against the law or public policy, nor opposed to any express terms of the contract, and it must be general and so known as to justify this presumption that the parties knew of it and contracted in reference to it.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

Action by C. M. Hart and another against the Western Railway of Alabama. From a judgment for plaintiffs, defendant appeals. Affirmed.

It is deemed unnecessary to set out the counts of the complaint, other than the following:

(2) "Plaintiffs sue defendant for a breach of the contract, and aver that during the entire month of January, 1906, the defendant was a common carrier of freight between Montgomery and Selma, both in the state of Alabama; that on, to wit, the 19th day of said month, in said year, another common carrier, connecting with defendant at said Montgomery, delivered to defendant at the last-named place, for the benefit of plaintiffs. and defendant as such common carrier then and there accepted and did undertake to transport to Selma, for a reward, and there deliver to the order of plaintiffs, 314 boxes of oranges, the property of plaintiffs, and to notify plaintiffs' agent, H. E. Shropshire, of the arrival of said oranges in Selma. And defendant breached the said contract in this: The servants of the defendant, employed by it in its business of common carrier between said two

places, did bring said car with said oranges in it to Selma, and there deliver said oranges to order of plaintiffs, on or about January 24, 1906; that the car in which said oranges were, during the entire time they were in defendant's care and control as such common carrier, was what is known as a 'refrigerator car,' which was fitted with appliances and instruments by which it could be ventilated, and thereby oranges and like perishable fruits in it for carriage preserved from decay; that when said oranges were delivered and placed in said car at the point of shipment by plaintiffs for transportation. the weather was cool and dry, but when said oranges were received by, and during the time when they were in the possession and control of, the defendant as such common carrier, the weather was warm and damp; that in such warm and damp weather oranges, if shut up in a closed car without a circulation of air, are liable to decay and perish rapidly; that the agents or servants of defendant, to whose care, custody, and control the said car was committed by defendant during the time said car was in defendant's possession as a common carrier, or some one or more of said agents or servants, by the use of due care and diligence in the manipulation and control of the appliances and instruments with which said car was fitted, could have prevented the decay of and injury to said oranges by ventilating said car and keeping a circulation of air in said car, but they or some one or more of them, did negligently fail to use due care and diligence in the manipulation of said appliances and the ventilation of said car, and as a proximate consequence of said negligent breach of said contract in failing to properly ventilate said car a great quantity of said oranges decayed and were lost to plaintiffs while they were in said car, and in defendant's possession and control as such common carrier, and plain-

tiffs thereby sustained great loss and damage, in the sum of $500, which by this count they sue to recover of defendant as a proximate consequence of said breach of contract."

(2a) Same as 2, with slight, immaterial variation in verbiage.

(5) Same as 2, down to and including the words "314 boxes of oranges, the property of plaintiffs," where they first occur therein, and adds: "That defendant as such common carrier did bring said oranges to said Selma on or about January 20, 1906, and thereafter, after a reasonably time had elapsed for plaintiffs' said agent or some one by his order to call for and receive said oranges from defendant, they remained uncalled for in the possession of defendant, and the defendant undertook and agreed as a warehouseman and for a reward, and for the benefit of plaintiffs, to keep said oranges with reasonable care and to deliver the same to plaintiffs' said agent when called for, notwithstanding which defendant breached the said contract of undertaking in this: Said oranges, at the time defendant received them in Montgomery and during the whole time they were in its possession, both as a common carrier and as a warehouseman, were stored in what is known as a 'refrigerator car,' which was a car fitted with appliances and instruments to ventilate said car, and preserve oranges and like perishable fruits from decay when stored therein, the use of which appliances were well known to defendant; that during the time when said oranges were in possession of defendant as such warehouseman the weather at Selma, where such oranges were being kept, was warm and damp, and that in such weather oranges, if kept in a close car, without ventilation, are liable to decay and perish much more rapidly than in cool, dry weather; that defendant, or its agents or servants in whose care or

custody said oranges were by it placed while they were in said car and in the control of defendant, as such warehouseman, by the use of ordinary care and prudence, could have manipulated such appliances and instruments with which said car was fitted, so as to ventilate said car and prevent the decay of said oranges, but defendant negligently failed to use due care and prudence in the ventilation of said car; and as a proximate consequence thereof said oranges were allowed to remain shut up in said car without proper ventilation, and a great quantity of them thereby decayed and perished before they were delivered by defendant at said Selma to plaintiffs' agent there, in breach of its said contract," etc.

(5a) in all respects similar to 5, except for a few immaterial changes in verbiage.

(6) Same as 2, down to and including the words "314 boxes of oranges, the property of plaintiffs," and adds: "That defendant brought said oranges to Selma on, to wit, January 20, 1906, and thereafter, after a reasonable time had elapsed for the said agents of plaintiffs or some one in their behalf to call for and receive said oranges from defendant, they remained unclaimed in its possession and the defendant undertook as a warehouseman, for the benefit of plaintiffs and for a reward, to deliver the same to the said agent promptly when called for or demanded, notwithstanding which the defendant did breach said undertaking or agreement in this: It negligently failed by and through its servants or agents to promptly deliver said oranges to said agent or plaintiffs, but to the contrary kept Howard & Kornegay, agents of said Shropshire, who made inquiries of said defendant's said agents or servants, in charge of the car in which said oranges were, in ignorance of their arrival, and informed said Howard & Kornegay that they (defendant's servants) had no oranges in Selma, although they had no-

tice at that time that said Howard & Kornegay were the agents of said Shropshire, and thereby failed and refused to deliver said oranges to the plaintiffs' said agent promptly, as they had agreed to do, and as a proximate consequence of said breach or undertaking a great part of said oranges were decayed and lost to plaintiffs by a delay in the delivery," etc.

(6a) Similar to 6.

Counts 7 and 7a were in the form prescribed by the Code for actions on bills of lading. All of the counts as originally filed sought to recover for the same property and in the same amount, and on practically the same state of facts. Counts 1 and 1a count on failure to deliver within a reasonable time after receipt of the oranges. Counts 3 and 3a allege the decay to have occurred from failure to ventilate, etc. Counts 4 and 4a allege the liability to be that of warehouseman, with want of reasonable care and prudence in preservation of property.

There were demurrers raising the question of misjoinder of causes of action, in that some of the counts were in case and some were ex contractu. The demurrers filed to counts 2 and 2a and 5 and 5a were as follows: Counts 2 and 2a: "(1) Because they fail to show or aver with sufficient certainty the contents of the contract which it is alleged has been breached. (2) It fails to show or aver with sufficient certainty wherein any contract has been breached. (3) Because it assumes that it is a duty of a common carrier to actually deliver goods to a consignee, when by law it is only required to transport and hold them ready for delivery on the call or demand of the consignee. (4) Because it fails to show with sufficient certainty for what breach plaintiff seeks to recover. (5) It seeks to recover in one and the same count for a failure to carry safely and for a con-

tract. (6) Because it fails to show or aver with sufficient certainty what servant or servants of the defendant negligently failed to take care of and preserve said oranges. (7) Because it fails to show or aver that it was the duty of any servant or servants of the defendant to preserve such oranges and prevent their decaying. (8) Because it assumes that it was the duty of defendant to preserve said oranges and prevent their decaying."

The following pleas were filed by the defendant, among others:

(3) To the complaint as amended as a whole, and to each count thereof separately: "That the said 314 boxes of oranges were delivered to the defendant at Montgomery, Ala., by connecting line, to wit, the Atlantic Coast Line Railroad Company, without a waybill or other information as to whom said oranges were consigned; that the defendant promptly transported said oranges on their receipt to Selma, but was unable to notify the consignee, without knowing to whom it was consigned, until said waybill was received or bill of lading therefor presented to the defendant's agent at Selma; that neither said waybill nor bill of lading reached the defendant's agent at Selma until the 24th of January, 1906, when said oranges were delivered to the consignee."

(4) To the complaint as a whole, and to each count thereof separately: "That said 314 boxes of oranges were shipped from Winter Haven, Fla., by the Atlantic Coast Line Railroad Company, under a written contract, which stipulated, among other things, that no carrier in possession of said oranges should be liable for any loss or damage thereto caused by decay or changes in weather; and the defendant avers that the damage complained of to said oranges was caused by decay or changes in weather."

[Western Railway of Alabama v. Hart, et al.]

(5) To the complaint as amended as a whole, and to each count thereof separately: "That said 314 boxes of oranges were shipped from Winter Haven, Fla., under a written contract, which stipulated, among other things that no carrier should be liable for loss or damage not occurring on its portion of the route, nor after said property was ready for delivery to consignee; and defendant avers that the consignee did not call for or claim said oranges until four days after it had reached Selma and was ready for delivery to the consignee, and thereby caused or proximately contributed to the injury complained of."

(6) To the complaint as amended as a whole, and to each count thereof separately: "That said 314 boxes of oranges were shipped from Winter Haven, Fla., by the Atlantic Coast Line, under written contract, which stipulated, among other things, that if the word 'order' is written thereon immediately before or after the name of the party to whose order the property is consigned, without any condition or limitation other than the name of the party to be notified of the arrival of the property, the surrender of the bill of lading properly indorsed shall be required before the delivery of the property at destination; and defendant avers that the word 'order' was written on said contract or bill of lading immediately before or after the name of the party to whose order the oranges were consigned, without any condition or limitation other than the name of the party to be notified of the arrival of the property, and said bill of lading was not presented at the point of destination to the defendant until the 24th day of January, 1906, on which day said oranges were delivered to the consignee on the presentation of said bill of lading; and defendant avers that, if there was any damage to said oranges while in the possession of the de-

fendant, it was caused by the failure of the consignee to present the bill of lading within a reasonable time after the oranges had arrived in Selma and were ready for delivery."

(7) "The defendant, for answer to count 1 of the complaint as amended, says that said 314 boxes of oranges were delivered to defendant at Montgomery, Ala., by a connecting line, to wit, the Atlantic Coast Line Railroad Company, without a waybill or other information as to whom said oranges were consigned; that defendant promptly transported said oranges to Selma, but was unable to notify the consignee, or to deliver said oranges, not knowing to whom the shipment was consigned, until the waybill was received or the bill of lading for the shipment was presented to defendant's agent at Selma; that neither the waybill nor the bill of lading reached the defendant's agent at Selma until the 24th day of January, 1906, when said oranges were delivered to the order of the consignee; that the consignee did not reside in or near Selma, and the defendant did not know his place of residence or his address; and that the failure to receive the waybill or other information as to the name and address of the consignee before January 24, 1906, was the cause of the delay in the delivery of said oranges, and was without negligence or other fault of the defendant."

(8) "The defendant, for answer to count 2 of the complaint as amended, says that the defendant received said shipment from a connecting line; that during the whole of the month of January, 1906, and for a long time before that, it was the general custom or usage in the states of Florida and Alabama, among railroad companies using refrigerator cars, not to manipulate the appliances attached to such cars unless there were instructions so to do on the waybills accompanying the ship-

ments; that no such instructions were noted on the way-bill in this instance; and that it was not negligence or other fault on the part of the defendant not to manipulate said appliances on the car containing said shipment."

(9) In answer to count 3, and sets up the matters set up in 7 and 8, as to custom and as to want of waybill or bill of lading.

(10) As an answer to counts 4 and 5, sets up the matters set forth in plea 8.

(11) As an answer to count 6, sets up the matters set out in plea 7, with the additional averment that before January 24th said Howard & Kornegay never did make known to the defendant or its agent that they were inquiring for the oranges in question.

(14) As an answer to counts 1 and 1a, and sets up the matters set out in plea 7.

(18) As an answer to counts 6 and 6a, and sets up the matters set out in plea 7, and the further allegation contained in plea 11.

Numerous demurrers were filed, but it is not deemed necessary to set them out.

GEORGE P. HARRISON, for appellant.—There was a misjoinder of counts.—*Munter v. Rogers,* 50 Ala. 283 and authorities cited therein. Demurrers should have been sustained to counts 2 and 2a.—*Dinsmore Corn Co. v. Duluth R. R. Co.,* 101 Wis. 563. Counts 7 and 7a are in case and subject to the demurrer, besides they constitute a misjoinder.—*Tallassee F. Mfg. Co. v. Western Ry. Co.,* 117 Ala. 520; Hutchinson on Carriers, sec. 744. Defendant's pleas 2a and 22 a were good as to those counts which sought to recover of defendant as a warehouse-

[Western Railway of Alabama v. Hart, et al.]

man.—*A. & A. R. R. Co. v. Ledbetter*, 92 Ala. 326. Pleas 4, 5 and 6 were good.—*Western Ry. of Ala. v. Little*, 86 Ala. 159; *Marks v. N. O. Cold Storage Co.*, 90 Am. St. Rep. 385. Defendant's pleas 8, 9, 10, 15, 16 and 17 were good.—8 Greenl. on Evid. sec. 257; *Barlow v. Landless*, 28 Ala. 704; *M. & E. Ry. Co. v. Hope*, 73 Ala. 704. The shipment was made by bill of lading, and the defendant had no right to make delivery otherwise than in strict accordance therewith.—*Penn. Ry. Co. v. Stern*, 38 A. & E. R. R. Cases, 551.

CHAMBLESS KEITH, and DANIEL PARTRIDGE, JR., for appellee.—Counts 1 to 7a inclusive, are in assumpsit.— *McGill v. Monett*, 37 Ala. 49; *Tallassee F. M. Co. v. Western Ry. Co.*, 117 Ala. 520. Counts 5 and 5a are on defendant's breach of contract.—*Bank of Mobile v. Huggins*, 3 Ala. 206; *Davis v. Hurt*, 114 Ala. 146; *Sharp v. Nat. Bank*, 87 Ala. 648. Clearly all the counts of the complaint relate to the same subject matter, and the Code section allowing a joinder of counts ex contractu and ex delicto is applicable here.—13 R. I. 135. A warehouseman is bound to use the means in hand to prevent injury if reasonable care and prudence would dictate their use.— *Backus v. Stewart*, 13 Fed. 69. The complaint was ex contractu, and hence the statute of limitations of one year has no application.—*McGill v. Monette, supra; Greil v. Pollak*, 105 Ala. 249. Pleas 7 and 14 were not good to the counts to which they were filed.—*Steele v. Townsend*, 37 Ala. 247; *S. & N. R. R. Co. v. Henline*, 52 Ala. 606; *S. & N. A. R. R. Co. v. Wilson*, 78 Ala. 587. Plea 11 was not good.—*E. T. V. & G. R. R. Co. v. Kelly*, 30 Am. St. Rep. 902; *Berry v. W. Va. R. R. Co.*, 67 Am. St. Rep. 781. Demurrers were properly sustained to plea 4, 5 and 6.—*L. & N. R. R. Co. v. Oden*, 80 Ala. 38; *McCarty v. L. & N. R. R. Co.*, 102 Ala. 201. The court

[Western Railway of Alabama v. Hart, et al.]

properly sustained demurrers to pleas 8, 10, 15 and 17. —*Florence W. Wks. v. Trinidad Co.*, 145 Ala. 647; 159 Ill. 53; 79 Ia. 518.

ANDERSON, J.—The complaint was amended in its entirety on May 28, 1908, subsequent to the adoption of the Code of 1907, and the rulings complained of by the appellant relate to the said amended complaint. Section 5329 of the Code of 1907 says: "All actions ex delicto may be joined in the same suit, and may be joined with actions ex contractu arising out of the same transaction, or relating to the same subject-matter, and the issues may be determined separately by the jury, and the proper judgment shall be rendered by the court and the costs fairly apportioned." Each count in the case at bar relates to the same subject-matter, and whether some are ex contractu and some in tort, if such is the case, would not, under the present statute, operate as a misjoinder, if they all arose out of the same transaction or related to the same subject-matter. It is true the cause of action arose and the suit was brought before the adoption of the Code of 1907; but the pleading complained of was filed subsequent to the present Code. While section 10 of the Code of 1907 stays the application of the Code in certain instances, it expressly authorizes it to apply to "changes in forms of remedy or defense, to rules of evidence, and to provisions authorizing amendments of process, proceedings or pleadings in civil cases." The demurrers proceeding upon the theory of a misjoinder were properly overruled.

Counts 2 and 2a are upon contract for a failure to safely transport the fruit, and the negligence set up by the servants of the defendant as to the failure to use the ventilating appliances belonging to the refrigerator car was but descriptive of the breach. If the fruit could

have been saved by using the ventilating appliances, it was the defendant's contractual duty, whether as carrier or warehouseman, to resort to all reasonable means to preserve the fruit, and the use of the ventilating appliances was a most reasonable requirement of a contract either to ship or store, and a failure to do so would be a breach of contract for a reasonably safe transportation as carrier or retention as a warehouseman. The demurrers insisted upon as to counts 2 and 2a and 5 and 5a were properly overruled.

As above set forth, it was unnecessary to decide whether or not some of the counts were in contract or tort, as they related to the same subject-matter and were not subject to the demurrers for misjoinder; but, inasmuch as a plea of the statute of limitations of one year was interposed, it becomes necessary to construe the counts, as said plea would be an answer to those in case, if any of these were. The appellant insists that those seeking to recover of the defendant as a warehouseman are in case, and which are counts 5, 5a, 6, and 6a. It seems to have been in former times a very perplexing question how the form of action in case and assumpsit against a carrier should be determined. "It seems, however, to be finally settled that while the allegation of a prom-ise in the declaration will not be sufficient to impress upon it the distinctive feature of a declaration upon the contract, because the words 'agreed,' 'undertook,' or even the more significant word 'promised,' must be treated as no more than inducement to the duty imposed by the common law, yet, if there be an averment of a promise and a consideration, the declaration will be construed to be upon the contract, and not for the breach of duty."—Hutchinson on Carriers (3d Ed.) § 1328; *Tallassee Falls Co. v. Railway,* 117 Ala. 520, 23 South. 139, 67 Am. St. Rep. 179. The counts in question not only claim for the

[Western Railway of Alabama v. Hart, et al.]

breach of a contract, but aver that "the defendant undertook as a warehouseman for a reward, and for the benefit of the plaintiff," and, we think, set up a contract, and the plea of the statute of limitations of one year was no bar to same, and the trial court did not err in sustaining the demurrer to said plea.

The third plea, if not otherwise bad, attempts to set up defendant's own negligence in not getting a waybill as an excuse and defense.

Pleas 7 and 14, attempt to answer counts 1 and 1a as amended. They do not deny the contract, but seek to avoid a compliance therewith because it failed to get a waybill without negligence on its part. The defendant was not prevented by the plaintiff from getting the waybill, and the failure to procure said waybill, whether through negligence or not, did not relieve it from transporting the goods safely, except, of course, in case of loss or destruction in the excepted cases, and which is not set up in the pleas. The defendant could as well set up that, after undertaking to deliver the goods, its engines got out of fix or it had no fuel, etc.

Pleas 11 and 18 attempt to answer counts 6 and 6a as amended. They are evasive, and do not traverse the complaint. They merely deny that Howard & Kornegay did make known to them that they were inquiring for the oranges in question, but do not deny that defendant informed Howard & Kornegay that they had no oranges in Selma in its possession or under its control at the time.

Plea 4 does not negative defendant's negligence as the proximate cause of the decay. The limitation set up in the contract relates to a decay caused by the weather and arising during the ordinary time and method of transportation, and does not limit the carrier's liability against a decay or loss caused by its negligence.

The fifth plea attempts to set up contributory negligence of the consignee for failing to call for the oranges for four days after the arrival in Selma, but avers no duty on the part of the consignee to do so. It avers no notice of the arrival, or any facts that would relieve the defendant from giving said notice.

Plea 6 avers the safe transportation and arrival of the oranges, and prescribes the delay in calling for same as the proximate cause of the damage to same. If the fruit was shipped with bill of lading attached, and by the terms of the contract could only be delivered to the holder or assignee of the bill of lading, it might be incumbent upon the holder to present same in order to get the fruit. But the failure to present the bill of lading and call for the fruit may have been due to a want of notice of the arrival. The plea does not aver notice to any one of the arrival, notwithstanding it avers that the bill of lading required notice of the arrival.

When a carrier undertakes to transport perishable goods in cars constructed and operated for that purpose and having appliances for ventilation, it assumes the contractual duty of so handling or manipulating the car as to make all the improvements and appliances available for the preservation and safe transportation of the goods, there being nothing in the contract to the contrary. Pleas 8, 9 and 10 do not set up any provision in the contract relieving the defendant from ventilating the car, but set up a custom among the railroads in Alabama and Florida of not using the ventilating appliances unless the waybill expressly required the same to be done. Custom is only evidence of fact, not of law, in cases where the contract is expressed in language of ambiguous, technical, or doubtful meaning, or is silent upon some material inquiry of fact. "To establish such custom, and make it operative in any given case, it must be reasonable, not

against the law or public policy, not opposed to any express terms of the contract, and must be so general and so known as to justify the presumption the parties knew of it, and contracted in reference to it."—*Buyck v. Schwing,* 100 Ala. 355, 14 South. 48, and authorities there cited. Whether or not the custom set up is reasonable, and not contrary to law or public policy, we need not decide, as there is no averment that said custom was so general or so known to the public as to justify the presumption that it was known to the shipper in this instance. The trial court did not err in sustaining the demurrer to pleas 8, 9, and 10.

The judgment of the city court is affirmed.

Affirmed.

DOWDELL, C. J., and McCLELLAN and SAYRE, JJ., concur.