# Loval *v.* Wolf.

## *Assumpsit.*

(Decided November 21, 1912. Rehearing denied December 17, 1912. 60 South. 298.)

1. *Sales; Contract of; Executed and Executory.*—The distinction between a contract of sale and a mere executory agreement to sell, is that, upon a sale the subject of the contract becomes the property of the buyer the moment the contract is completed, whether delivered or not; but in an executory agreement the title remains in the seller until the contract is executed.

2. *Same.*—An executory contract of sale becomes executed upon the delivery and acceptance of the goods in accordance with the contract with intent to pass title.

3. *Same; Transfer of Title; Conditions Precedent.*—Where a buyer is bound by the contract to do something as a condition, either precedent or concurrent, on which depends the passing of the title, the title will not pass until the performance of the condition, even though the goods are delivered, unless it appears that it was the intention to make the sale absolute and complete without regard to the performance of condition as to price or measurement.

4. *Same.*—The rule that title does not pass if something remains to be done to ascertain the price is merely one of presumption, and will yield to evidence showing an intent to transfer the property immediately.

5. *Same.*—In determining whether the parties intended the title to personal property to pass by the sale, actual delivery of the goods is of the greatest importance, and, if accompanied by declarations showing that the title should pass immediately and not at

some future time, the delivery becomes most cogent of all legal proofs of such intention, when the good faith of the transaction is not impugned.

6. *Same; Jury Question.*—Where a seller received an advance or partial payment on the cotton before it was weighed and delivered, and deposited the cotton receipts with the buyer's bank, and there was evidence that this constructive delivery by deposit of the receipts was merely to protect the buyer and the bank and was not intended to pass title, and also evidence that the delivery was unqualified and for the purpose of passing title, it was a question for the jury whether or not title passed.

7. *Same; Intention.*—Where a seller of cotton received part of the purchase price and deposited receipts for the cotton with the bank before the cotton was weighed and delivered, whether the title was thereby passd, or whether the deposit was merely as security, depended on the intention of the parties thereto, and not on the designation of such a part payment as a loan or an advance or partial payment.

8. *Same; Payment; Time.*—All sales are for cash unless the parties make a different contract or so conduct themselves as to indicate that the sale is not for cash.

9. *Evidence; Parol to Vary Writing; Delivery of Instruments.*— Where the instruments themselves were required to be in writing the question as to whether their delivery was absolute or conditional is open to parol evidence.

10. *Custom and Uses; Evidence.*—Where a buyer of cotton wrote to its bank to deliver a check for an advance payment upon surrender of receipts for cotton "for our account," the words surrender and for our account were ambiguous as to whether the deposit of the receipts was intended to pass title or merely as a security for the payment although they have a well-defined meaning, and hence justified evidence of the custom controlling such transaction.

11. *Same; Effect.*—In order to control the construction of a contract a custom must be reasonable and not against law or public policies, nor contrary or opposed to any express terms of the contract, and must be so general and so known as to justify the presumptions that the parties knew thereof and contracted with reference thereto.

12. *Same.*—If parties to a sale of cotton expressly agreed that the delivery of receipts therefor was absolute and for the purpose of passing title and not merely as a security for an advanced payment, evidence of custom controlling such transactions was not competent as custom cannot change an express contract.

13. *Same.*—Although the making of advanced payments on cotton was the exception rather than the rule, evidence of unbroken custom, whenever advanced payments were made on a purchase, to deposit receipts for the same merely as a security and not to pass title, was competent.

14. *Contracts; Implied.*—The existence of an express contract excludes an implied agreement as to the same matters.

[Loval v. Wolf.]

15. *Appeal and Error; Review; Harmless Error.*—Where the court submitted to the jury only the question of an express agreement and charged that such express agreemer't must be found before the alleged seller was entitled to recover, the admission of .evidence relative to a custom prevailing in such cases was harmless even if erroneous.

APPEAL from Perry Circuit Court.

Heard before Hon. B. M. MILLER.

Action by Otto Wolf against the Planters' & Merchants' Bank, in which W. S. Loval, as trustee in bankruptcy of Knight, Yancey & Co., was made a party defendant. From the judgment, the trustee appeals. Affirmed.

The bank answered, disclaiming any interest in the money sued for, deposited the same in court, and suggested W. S. Loval, as trustee of the estate of Knight, Yancey & Co., bankrupts, as a claimant of the money, setting up that he was not a party to the plea, and that he claimed the money without collusion. Said Loval was made a party defendant, and appeals from the judgment rendered against him.

Wolf owned 626 bales of cotton, which he tendered to the representative of Knight, Yancey & Co., at 14⅝ cents per pound, basis middling, and, upon their acceptance, asked for an advance of $30,000, pending the reweighing, sampling, and shipping out of the cotton. In response to this, the representative of Knight, Yancey & Co. drew a check to Wolf's order in words and figures as follows: "No. 18. Uniontown, Ala. April 14, 1910. Payable on delivery to bank of receipts for 626 bales of cotton. Pay to the order of O. Wolf $30,-000.00, thirty thousand and no/100 dollars. [Signed] Knight, Yancey & Co., by Charles A. Patterson, Agent. To planters' & Merchants' Bank, Uniontown, Ala." This check was received and indorsed by Wolf and placed to his credit; he stating at the time that it was merely

an advance on the cotton, and was not the full amount due for the same, but the bank declining to pay the draft, except on the surrender of the receipts. The cotton was not sampled and reweighed at once, and before it was sampled and reweighed Knight, Yancey & Co. became bankrupts. In the meantime Wolf's insurance had been canceled, and the insurance on it had been covered by a blanket policy carried by Patterson as a representative of Knight, Yancey & Co. By agreement of the trustee of Knight, Yancey & Co., the bank, and Wolf, the cotton was reweighed, sampled, and sold, and the bank was paid from the sale the $30,000 they had advanced on the cotton, together with the interest on the same up to the date of sale, and the balance of the fund is the fund in controversy. Patterson was the representative of Knight, Yancey & Co. at Selma; Morgan, its representative at Uniontown. White was cashier of the bank.

PERCY, BENNERS & BURR, for appellant. The primary question is whether the letter written by Patterson to the bank and Wolf's acceptance of the money pursuant to its terms can be be explained away by testimony to the effect that Patterson agreed to loan him the money, taken in connection with the testimony as to the so-called custom prevailing at Uniontown. The letter provided for a surrender of the receipts for the cotton and the word surrender is defined as a transfer of title as well as possession.—*Evans v. U. S.,* 153 U. S. 584. It was further to be surrendered "for our account." The contention that the title would not pass until the cotton was reweighed and classified is answered by the fact that there was an unqualified delivery of the goods sold and that title passed, notwithstanding something remained to be done, to ascertain the price and notwith-

[Loval v. Wolf.]

standing there may have been a cash sale.—*F.-C. Hard-ware Co. v. Gray,* 104 Ala. 22; Mechem on Sales, section 515, et seq.; Williston on Sales, section 269; *Wilkerson v. Williamson,* 76 Ala. 163; *Sheally v. Edwards,* 73 Ala. 175; *Aderholt v. Embry,* 78 Ala. 185; 35 Cyc. 286, 287. The rule and qualification of sales for cash is similar.—*Harmon v. Goetter,* 87 Ala. 325; *Blackshear v. Burke,* 74 Ala. 239; *Neal, et al. v. Boggins,* 97 Ala. 611; *Greene v. Lewis,* 85 Ala. 221; *Crawford v. Spragins,* 109 Ala. 353; *Drake v. Scott,* 136 Ala. 261 and authorities cited. On the assignments of error relative to the admission in evidence as to a so-called custom prevailing in Uniontown, counsel cite, *Western Ry. of Ala. v. Hart,* 160 Ala. 614; *Haskins v. Warren,* 115 Mass. 514; *E. T. V. & G. R. R. Co. v. Johnson,* 75 Ala. 604. The evidence was not sufficient to establish a custom. —*Austell v. Crawford,* 7 Ala. 342; *Schloss Co. v. Smith,* 40 South. 91. Counsel insist on rehearing that the error in admitting proof of custom was not cured by the manner in which the court submitted the case to the jury and the charge given confining them to the express agreement and cite the following cases:—*Pace v. L. & N. R. R. Co.,* 166 Ala. 519; *Fidelity M. L. T. Co. v. Satterfield,* 162 Ala. 291; *Ala. C. C. & I. Co. v. Held,* 154 Ala. 580 and authorities therein cited.

W. M. FOWLKES and PETTUS, FULLER & LAPSLEY, for appellee. Leaving out the question as to custom and usage the facts in this case demonstrate that the plaintiff was entitled to the affirmative charge for under the undisputed testimony the contract was executory with conditions precedent to the passing of the title which conditions have not been complied with.—*Batre v. Simpson,* 4 Ala. 305; *Aderholt v. Embry,* 78 Ala. 185; *Foley v. Felrath,* 98 Ala. 176; 34 Cyc. 274, 281, 283;

24 A. & E. Ency. of Law, 1049-51. The delivery was a qualified one.—*Batre v. Simpson, supra; Leigh v. M. & O. R. R. Co.*, 58 Ala. 165. The evidence shows as a matter of law that title did not pass because the intention of the parties was to the contrary.—Authorities supra; *Commercial Bank v. Hurt*, 99 Ala. 130; *Adler v. Prestwood*, 122 Ala. 367; *Harrison v. Palmer*, 76 Ala. 158; *Baker v. Barclift*, 76 Ala. 414. The presumption is that sales are for cash, payment to be concurrent with delivery in all cotton transactions.—*Adair v. Stovall*, 148 Ala. 455; *Brady v. Green*, 159 Ala. 482. As to the admission of evidence as to custom and usage counsel cite *Waring v. Grady*, 49 Ala. 465; *A. & T. R. R. R. Co. v. Kidd*, 29 Ala. 221; *Mobile M. B. Co. v. McMillan*, 27 Ala. 77; *Kinney v. S. & N. R. R. Co.*, 82 Ala. 368; *Buyck v. Cain*, 100 Ala. 355.

ANDERSON, J.—"After the formation of the contract of sale, the question of its effect arises as to when the bargain amounts to an actual sale or when it is a mere executory agreement. The distinction between the two contracts consists in this: That in a bargain and sale the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded and without regard to the fact whether the goods be delivered to the buyer or remain in possession of the seller; whereas, in an executory agreement, the goods remain the property of the seller till the contract is executed. This distinction is of importance in two connections: First, as between the parties to the contract, in order to determine upon whom the loss shall fall in case the property is destroyed, for it is plain that, if the subject of the sale is lost or destroyed, the loss must fall upon the party who holds the title; thus, if before the transfer has taken

place a loss accrues, it falls upon the seller, otherwise upon the buyer. And, second, in order to know what right creditors or subsequent purchasers of one party may acquire as against the other. An executory contract of sale becomes executed upon delivery and acceptance of the goods in accordance with the contract with intent to pass title."—24 Am. & Eng. Ency. Law, 1045.

"Mr. Benjamin, in his work on Sales, in discussing executory or conditional sales of chattels, in section 320, says: 'Where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer.' The foregoing is in harmony with the rulings of our own court. —3 Brickell's Digest, 732, § 9, and cases there cited. These cases must be limited, however, to contracts wherein it does not appear that an intention to make the sale absolute and complete, without any regard to the performance of these usual prerequisites, at least as to price and measurement.—*Shealy v. Edwards,* 73 Ala. 175, 49 Am. Rep. 43." *Wheeler v. Cleveland, et al.,* 170 Ala. 432-433, 54 South. 277, 278.

"Where the rule exists that the property presumably does not pass if something remains to be done to ascertain the price, the rule is everywhere merely one of presumption which will yield to evidence showing an intent to transfer the property immediately. The most noticeable circumstance tending to show an intent to transfer the ownership is delivery of the goods to the buyer. It has already been observed that, even though something remains to be done to put the goods in a deliverable condition, actual delivery of the goods would

indicate, in the absence of express retention of owner-
ship, an intent to transfer it immediately. This is still
more clearly true where nothing remains to be done
but weighing or measuring to fix the price."—Williston
on Sales, § 269; Mechen on Sales, 515; *Francis-Chenow-
eth Hardware Co. v. Gray,* 104 Ala. 236, 15 South. 911,
53 Am. St. Rep. 37.

In determining whether the parties to the contract
for the sale of personal property intended that title
should pass so as to complete the sale, the *actual* deliv-
ery of the goods is of the greatest importance; and if
there be accompanying declarations, showing an inten-
tion that the property should pass to the vendee imme-
diately, and not at some future time, the fact of deliv-
ery, as evidence of intention, becomes manifestly the
most cogent of all legal proofs, when the good faith of
the transaction is not impugned.—*Shealey v. Edwards,*
73 Ala. 175, 49 Am. Rep. 43.

In the case at bar there was no actual delivery of the
cotton, but a constructive delivery by depositing the re-
ceipts with the bank upon the receipt of the check for
$30,000, which was not the entire purchase price, but
which, according to all the evidence, was either a loan,
advance, or partial payment. So the question arises:
Was the delivery of the cotton receipts an unqualified
one and with the intention of passing the title to the
cotton into Knight, Yancey & Co., or was it a qualified
delivery and intended merely to protect Knight, Yan-
cey & Co. and the bank as security for the $30,000 so ad-
vanced or loaned? In other words, did the parties in-
tend that the delivery was unconditional and was made
for the purpose of passing the title to the cotton, or that
the receipts were merely placed there as a protection
and that the title was not to pass until it was weigh-
ed and the balance of the purchase money was paid?

From the testimony of the plaintiff, Morgan, and parts of Patterson's, the jury could well infer that the delivery of the receipts was conditional and there was no intention between the parties that the title to the cotton should thereby pass absolutely or until the contract was completed by weighing the cotton and paying for same in full. There was other evidence, however, from which the jury could infer that the intention of the parties was that the delivery of the receipts was unqualified and that the title to the cotton should thereby pass to the purchaser; at least they could infer this from the letter and check, the conversation between the plaintiff and White, and certain parts of the testimony of Patterson, and we do not think that either side was entitled to the general charge, and the question was properly submitted to the jury.

Nor should the question be decided upon the technical words of whether the $30,000 was loaned, advanced, or made as a partial payment, but whether or not it was received and the cotton receipts were turned over and received with the intention that the title to the cotton as represented by said receipts was to pass to the vendee.

The plaintiff explained the circumstances under which the $30,000 was procured and was corroborated by Morgan. Patterson also, in a measure, corroborated these witnesses, though some of his evidence was against the conditional delivery theory. The check and letter did not become the sole repository of the contract, but should have been taken in connection with the conversation and negotiations leading up to same, and there was nothing in them, even if so taken, as to conclude that the delivery of the receipts was absolute and unconditional.

17—179

Moreover, the question of delivery, even of instruments required to be in writing and whether absolute or not, is subject to parol evidence. So, in the end, the main question in this case was one of intention between the parties, as the contract was not a complete one, upon one theory of the case, for the construction of the court alone, but just what it really was and what the parties intended was a question for the jury.—Mechem on Sales, § 502.

The letter and check contained words of a well-known meaning, it is true; but as to the application of which, under the then existing circumstances, there was some doubt and uncertainty. For while the word "surrender" has a well-known meaning, the receipts could have been surrendered and not absolutely for the purpose of passing the title to the cotton. They may have been "surrendered" as collateral security to be held by the bank to protect the vendee and itself, as the said bank advanced the $30,000 credited to the plaintiff. Again, the letter instructed the bank to deliver the check upon the surrender of the receipts, which said receipts he is to deliver to you "for our account." Now, if this was money, there could be little doubt as to what was to be done with it, but, being cotton, it was open to explanation as to what was meant by "for our account"; whether to secure the bank and themselves for the $30,000, or whether the cotton was to be treated as the property of the vendee and sold by the bank and the proceeds credited to the said vendee. The evidence as to what formed the contract, upon one theory of the case, when taken in its entirety, was sufficiently vague and uncertain, as to the exact purpose for which the receipts were delivered, that evidence of a well-established usage or custom controlling such transaction was admissible, as a presumptive fact that the parties had

[Loval v. Wolf.]

such usage and custom in mind when dealing with each other.

Such custom, to be operative, must be reasonable, not against the law or public policy, nor opposed to any express terms of the contract, and must be so general and so known as to justify the presumption that the parties knew it and contracted with reference thereto. —*Western Ry. Co. v. Hart,* 160 Ala. 614, 49 South. 371.

If the parties expressly agreed that the receipts were to be held as security, or if they expressly agreed that the delivery was to be absolute and for the purpose of passing title, then there was no operation for evidence of custom, as custom could not change the express contract.   On the other hand, if there is an inference that the contract was incomplete in part, or that the words employed were of doubtful signification, as applied to the facts in the case, and which was the result here, under one aspect of the case, then evidence of such a custom as above mentioned was admissible for the purpose of showing that the parties had said custom in mind and contracted with reference to same.

There was no error in permitting  the  custom  in Uniontown of cash sales of cotton.   Moreover, that is the law, unless parties make different contracts or so conduct themselves as to indicate that the  sale  was not for cash.

Nor was there error in permitting the proof of the custom of making partial payments or advances on cotton before the cotton is reweighed and delivered, and that the receipts are always deposited with the bank as a mere security for the partial payment or advance. It is true the witness "Capt. Johnston" did not testify that these advances were a common custom, but that it was the custom to deliver the cotton upon payment in full and after reweighing.   He stated, however, that

these advances were often made, and, when so made, it was always the custom to surrender the receipts to be held only as security for the sum advanced and which was to be deducted upon final settlement. The result is that such transactions seem to have been the exception rather than the rule; yet, when they were so·had, it was the unbroken and well-known custom to deposit the receipts as security for the advance, and we think that proof of this custom where such transactions occurred was admissible.

There were two theories under which the jury could have found for the plaintiff: First, that there was an express agreement that the advance of $30,000 was to be a loan, and that the receipts were delivered only as security; second, that, even if there was no express agreement of a loan, the contract of sale and delivery was open to explanation and was so uncertain and incomplete that evidence of usage and custom was admissible to show what the parties intended and had in mind when advancing the money and delivering the cotton receipts, and from which the jury could infer an absolute sale and delivery, a conditional sale only, or an implied loan or advance with the delivery of the receipts as collateral security. Evidence of usage and custom was admissible under the second theory, but not under the first. The trial court, at the request of the claimant (charge 3) peremptorily charged the plaintiff out as to the second or implied theory, and confined his right to recover solely upon the existence of an express agreement that the $30,000 was a loan and that the receipts were delivered pursuant to said agreement, thus, in effect, charging out all evidence going to the establishment of the second theory and which had no bearing upon the first theory. Therefore all evidence as to the usage and custom when similar transac-

tions were had could not and did not have any bearing on the only question submitted to the jury—that is, an express loan vel non—and said evidence did not tend to contradict or corroborate the existence of an express agreement that the advance was to be a loan. Under this charge the jury found for the plaintiff, and, in order to do so, found that there was an agreement between Wolf and Patterson that the advance was a loan and that the cotton was delivered pursuant to said agreement, therefore the evidence as to the usage and custom could not have had any legitimate influence upon this issue; so, if there was any error in the testimony of the witnesses as to custom and usage, or in giving opinions and conclusions as to what was or was not a delivery or a loan according to said usage and custom, it was error without injury, as it did not tend to establish or disprove an express agreement. The only evidence, as to which error is insisted upon, that could have any bearing upon the only issue upon which the plaintiff could recover, under the charge of the court, was in permitting the plaintiff, Wolf, to prove that he had the receipts changed so as to concentrate the cotton. This was no doubt a circumstance that he was exercising dominion over the cotton and was perhaps corroborative of a loan theory, and as a rule a party cannot by his own acts or declarations, after the transaction, make evidence for himself, and, if this evidence stood alone, it might be error; but the witness stated, and without contradiction, that this was done at the request of Patterson. It was not therefore a mere voluntary exparte act of the plaintiff.

The judgment of the circuit court is affirmed.

Affirmed. All the Justices concur.

## ON REHEARING.

It is insisted upon rehearing that the holding in this case that, if there was error in admitting plaintiff's evidence as to custom, it was error without injury because of a certain charge given at the claimant's request, is unsound, and we are cited to certain cases, hereinafter noted, as being contrary to the present holding. As said in the original opinion, this evidence tended only to establish an implied loan or conditional surrender of the cotton receipts, and this question could have had no bearing upon the existence vel non of an express loan, which the charge instructed the jury had to exist in order for the plaintiff to recover. This instruction, in effect, eliminated every issue from the case, except the existence vel non of an express agreement that the $30,000 advanced was a loan and to the establishment of which the custom could have had no bearing.

As said in the recent case of *Alexander v. Ala. W. R. Co., infra,* 60 South. 295, the existence of an express contract excludes all room for an implied one. The charge in question did not merely charge out certain counts by number, but expressly postulated the only facts upon which the plaintiff could recover, and, in effect, told the jury that an implied agreement would not suffice, and we think this is a case in which this court can safely say that said charge and the verdict of the jury rendered harmless the admission of the evidence tending to establish an implied loan or conditional surrender of the receipts.

The quotation from the case of *Pace v. L. & N. R. R. Co.,* 166 Ala. 531, 52 South. 56, to wit: "Indeed, charges Y and Z, given at the request of the plaintiff, appear to have eliminated, as well as charges could, this evidence from the case. But erroneous rulings on the ad-

missibility of evidence cannot be cured by charges"—
citing *Harbour v. State,* 140 Ala. 103, 37 South. 330.
We think the use of the words that ."erroneous rulings
on the admissibility of evidence cannot be cured by
charges" was inapt, and that the writer meant to state,
not that the error could not be cured, but that the prop-
er way to eradicate illegal evidence was not by charging
it out, but by making seasonable objection to same, as
this was the holding in the *Harbour Case,* cited.   In
other words, it was there held that the trial court would
not be put in error for refusing charges seeking to elim-
inate evidence which should have been objected to when
introduced.   The court did not hold, however, that the
improper admission of evidence could not be cured by
oral or special charges eliminating it.   On the other
hand, the opinion further on in the *Pace Case, supra,*
recognizes that the error in admitting evidence can be
cured in certain instances, and cites *Stevenson v. What-
ley,* 161 Ala. 250, 50 South. 41, which is an authority
in support of the present holding.

The evidence improperly admitted in the case of *Fi-
delity Co. v. Satterfield,* 162 Ala. 294, 50 South. 132,
was not eliminated, nor was the issue of payment, which·
it tended to establish.   The charge merely limited the
evidence as not going to show payment, but to show
ability to do so.   The ability to make payment was but
an indirect way to show that it was made, and the issue
of payment was not eliminated by a charge limiting the
effect of the evidence.   The rule quoted from the case
of *Ala. Consol. Coal & Iron Co. v. Heald,* 154 Ala. 595,
45 South. 686, is not in conflict with the present hold-
ing, except that the court declined to invoke the doc-
trine of error without injury, but did so upon the
ground that, while the charge eliminated all counts but
one, it was left to the jury to pass upon the applica-

tion of the evidence to the counts. Here the charge did not.put it to the jury to ascertain whether or not the evidence of custom applied to certain counts, but it postulated the only theory or fact upon which the plaintiff could recover, and, in effect, eliminated the issue of an implied loan or conditional surrender or delivery of the receipts. Moreover, the *Heald Case, supra,* was reversed on another point also, and the application of error without injury on this particular point was not necessary as the case had to be reversed for another reason, and the court could have well omitted what was said as to error without injury, as the case could not have been affirmed even if the error in this one particular was cured. Moreover, the present holding finds support in the case of *Stevenson v. Whatley, supra,* a more recent case than the *Heald Case, supra.*

DOWDELL, C. J., and MCCLELLAN, SAYRE, and SOMERVILLE, JJ., concur in the opinion. MAYFIELD and DE GRAFFENRIED, JJ., concur in the conclusion, but prefer doing so on the theory that the plaintiff was entitled to the affirmative charge.