(81 South. 76)

## MUNSON S. S. LINE v. HORACE TURNER & CO. (1 Div. 57.)

(Supreme Court of Alabama. Jan. 23, 1919.)

1. CUSTOMS AND USAGES ⬯19(3)—EVIDENCE —SUFFICIENCY.

In an action by a shipper whose lumber was jettisoned, and who was unable to recover against the marine insurer because the lumber was insured as being below decks, though loaded on the deck, evidence *held* to establish a custom in the shipping trade to note on the bill of lading when lumber was loaded on deck, although the bill of lading did not contain such notation, and for that reason the lumber was insured as being loaded below decks.

2. SHIPPING ⬯106—BILLS OF LADING—ACTIONS—EVIDENCE.

In an action by a shipper whose lumber was jettisoned, and who was unable to recover against the marine insurer because the lumber, though loaded on decks, was insured as being loaded below deck, as the bill of lading contained no notation of the fact that it was loaded on deck, evidence *held* insufficient to show that the bill of lading was issued before the lumber was loaded.

3. SHIPPING ⬯106—OWNER OF PROPERTY—PRESUMPTION.

Where freight on an ocean shipment of lumber was prepaid, and a bill of lading issued showing that the property was duly consigned to a named person at destination, there is a presumption, in the absence of other proof, that the consignee became the owner of the property.

4. SHIPPING ⬯106—ACTION—EVIDENCE.

Where there was a presumption from the naming of the consignee in the bill of lading that it became the owner of a shipment of lumber, *held*, in the absence of evidence to the contrary, that the shipper, who was unable to recover on a policy of marine insurance, the lumber having been jettisoned, etc., cannot recover against the ocean carrier.

5. SHIPPING ⬯106—BILLS OF LADING—ACTIONS—EVIDENCE.

In an action against an ocean carrier by a shipper whose lumber was jettisoned, and who was unable to recover on a marine policy because the lumber was insured as being loaded below decks, as the bill of lading contained no notation, as was customary showing that the lumber was loaded on the decks, *held*, that to warrant recovery the evidence must show that the policy would have included the loss but for the fact that it was written on lumber loaded between decks.

6. SHIPPING ⬯106—ACTIONS—RECOVERY.

Where lumber was loaded on the deck of a vessel, but the bill of lading did not contain a notation of that fact, and the shipper was unable to recover on a marine policy because it was written on the theory that the lumber was between decks, *held* that, though the policy was in excess of the value of the lumber, the shipper may, where the ocean carrier was at fault in failing to make a notation on the bill of lading

showing where the lumber was loaded, recover an amount not to exceed the amount which otherwise would have been recoverable on the policy, with interest.

7. APPEAL AND ERROR ⬯1175(7)—REVIEW—ACTION TRIED TO COURT.

Where an action at law was tried to the court, the appellate court may, in its discretion, reverse the cause and render judgment, or it may reverse and remand the cause for further proceedings.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Action by Horace Turner & Co. against the Munson Steamship Line. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Harry T. Smith & Caffey, of Mobile, for appellant.

Armbrecht, Johnston & McMillan, of Mobile, for appellee.

GARDNER, J. Suit by appellee against appellant to recover damages for the breach of a contract arising from the shipment of certain lumber delivered by the plaintiff to defendant as a common carrier for hire.

The cause was tried upon count ten of the complaint and the general issue, resulting in a judgment for the plaintiff, from which the defendant prosecutes this appeal.

The character of this litigation, as disclosed by the pleadings, is found set out in the report of the case on former appeal (Turner v. Munson Line (16 Ala. App. 223, 77 South. 61), and a reference to the statement there found will suffice for all purposes here.

It was the contention of the plaintiff that, in consideration of the delivery of 25,456 feet of lumber to the defendant for shipment as a common carrier for hire, the defendant agreed with the plaintiff that upon loading such lumber onto one of its steamships the defendant would, by placing a notation or memorandum on the bill of lading, which the defendant would issue to the plaintiff for such shipment of lumber, inform the plaintiff if such lumber, or any part thereof, was loaded on deck. If no part of the shipment was loaded on deck, such fact was to be indicated by the absence of any notation on the bill of lading whatever, and the absence of such notation would inform the plaintiff that the shipment was loaded under deck.

It was further contended by the plaintiff that this information was essential in effecting the marine insurance, for which (with defendant's knowledge) it had contracted as to this particular shipment; that the bill of lading in the instant case was without any notation whatever, and therefore conveyed notice to the plaintiff that the lumber was loaded under deck. The insurance was secured for the lumber as "under deck," while

as a matter of fact the lumber was loaded on deck; and that by reason of this breach of contract the insurance obtained was uncollectable.

[1] There was no contention of any express contract on the part of the defendant as to such notation on the bill of lading, but the insistence is that the duty to give such notice became a part of the contract by implication, by reason of the fact that such had been the uniform and well-known custom or usage existing between shippers and steamship lines at Mobile for a long number of years; and that such custom still exists. It was strenuously argued by counsel for appellant that the evidence was insufficient to establish such custom or, usage as to make the same binding in the instant case. There is no controversy as to the degree of proof required for the establishment of such custom or usage of trade as to become binding upon the parties, as set forth in numerous cases. Western Ry. v. Hart, 160 Ala. 599, 49 South. 371; Price v. White, 9 Ala. 563; Smith v. Rice, 56 Ala. 417; Syson v. Hieronymus, 127 Ala. 482, 28 South. 967.

We deem it unnecessary to enter into a discussion of the evidence upon this question. Suffice it to say that, upon a careful examination thereof, we are persuaded that the testimony of the plaintiff was sufficient to justify the conclusion that the custom, as contended for by the plaintiff, had been in existence and use for a period of 20 years at Mobile; that it was uniform among all steamship lines—to use the language of the witness—"both at Mobile and everywhere else"; that the proof was such as to create a presumption of knowledge on the part of the defendant of this custom, and, indeed, an actual knowledge thereof was shown and that the parties contracted in reference thereto. The testimony of witness Gibboney discloses that such was the custom as to the defendant company, wherein he states "it was the custom of our company to communicate whether shipments were on deck or under deck at the time of the issuance of bill of lading." There was also evidence tending to show that the defendant knew that plaintiff had effected insurance on this particular shipment, and that the insurance was dependent upon whether the defendant advised the plaintiff the lumber was loaded under deck or on deck. This is disclosed on the cross-examination of witness Cadzow for the defendant.

We are of the opinion that the plaintiff had sufficiently shown this custom or usage so as to make the same binding and effective under the contract here in question, and, further, that the defendant knew that the plaintiff had effected insurance on the cargo, and that such insurance was vitally affected by the information which they were to give the plaintiff as to the loading of the lumber.

[2] It is argued, however, that such custom could have no effect in this case, for the reason that in this particular shipment it was agreed between the parties that the bill of lading should be issued before the lumber was loaded, so that the plaintiff could procure a certain certificate required by the Cuban government to accompany the shipment, and that, therefore, there could be no possible room for the application of the evidence in regard to the custom. The witness Cadzow, for the defendant, testified as to such special arrangement, and it appears there had previously been some special arrangements to this effect as to a few other shipments between these parties; but as to this particular shipment, the testimony of the plaintiff is in direct conflict with that of witness Cadzow, and this presented a question of disputed fact from which it could be reasonably concluded there was no special arrangement in this particular case. We are also of the opinion that the trial court could draw a reasonable inference from all the testimony in the cause that the lumber was in fact loaded on the vessel before the bill of lading was issued, notwithstanding the witness Cadzow had testified to the contrary.

Some of the argument by appellant's counsel is addressed to the proposition that there can be no recovery because the special damages sought to be recovered rested upon a matter of speculation, and came within the influence of the following authorities: Richmond Hosiery Mills v. W. U. Tel. Co., 123 Ga. 216, 51 S. E. 290; Beatty Lbr. Co. v. W. U. Tel. Co., 52 W. Va. 410, 44 S. E. 309; W. U. Tel. Co. v. Watson, 94 Ga. 202, 21 S. E. 457, 47 Am. St. Rep. 151; Johnson v. W. U. Tel. Co., 79 Miss. 58, 29 South. 787; W. U. Tel. Co. v. Webb (Miss.) 48 South. 408; W. U. Tel. Co. v. Hall, 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479; Postal Tel. Co. v. Barwise, 11 Colo. App. 328, 53 Pac. 252; McQuilkin v. Postal Tel. Co., 27 Cal. App. 698, 151 Pac. 21.

The evidence for the plaintiff tends to show that it in fact did insure the property, but "failed to insure it in such a way as that the contract of insurance would be valid and enforceable." The insurance was under deck, and a much higher rate is required for insurance when the shipment is "on deck." It therefore is made to appear by the plaintiff's testimony that the insurance was ineffective on account of this breach. This question, however, was treated by the Court of Appeals upon the former review of this cause upon the pleadings, and we think needs no further discussion here.

We are of the opinion that the authorities relied upon are without application to the instant case.

[3, 4] It is alleged in the complaint that the shipment of lumber was to be delivered to Eduardo de Mazarrando, agent for the Soledad Sugar Company, Cienguegos, Cuba, for the benefit of the plaintiff. It appears

from the proof that the freight was prepaid, and the bill of lading issued showing the property duly consigned to the above-named party. The presumption would seem to be, in the absence of other proof, that the consignee became the owner of the property. Montgomery & West Point R. R. Co. v. Edmonds, 41 Ala. 667. See, also, Capehart v. Furman Farm Co., 103 Ala. 671, 16 South. 627, 49 Am. St. Rep. 60.

We find no evidence in the record to rebut this prima facie case of ownership, and nothing indicating an insurable interest retained by the plaintiff to the property, and no evidence to support the allegation that the shipment was for plaintiff's benefit. Under such circumstances, therefore, the plaintiff could not recover in excess of nominal damages.

In answer to this argument, counsel for appellant insist that such proof can be inferred from certain expressions found in letters written to the plaintiff by the defendant, and from one general expression in the testimony of the plaintiff, Turner, himself. We have carefully noted this argument in connection with the reference to this testimony, but we are persuaded that it does not suffice to supply this deficiency.

[5] It would appear also that there is still another omission in the proof touching an important phase of the case. The certificate of insurance offered in evidence does not disclose the terms or provisions of the insurance contract issued, but recites that the property was insured under a certain numbered policy. This policy does not seem to have been offered in evidence, and no further reference is made thereto. Illinois Surety Co. v. Donaldson, 79 South. 667.[2] It therefore has not been made to appear that this insurance effected would have included a loss by reason of the property being jettisoned or thrown overboard on account of the perils of the sea. It is specifically alleged in the complaint "that such insurance would have covered the loss occasioned by the jettison aforesaid." We do not find this omission in the proof otherwise supplied.

[6] The insurance secured on the property was confessedly an amount in excess of the value of the lumber, which excess was accounted for in most part by the fact that the same included prepaid freight, but whether this was in fact included in the insurance effected does not appear from the record.

We are of the opinion that the amount of recovery should not exceed what would be legally collectable under the policy of insurance, and that interest on such amount is properly allowed.

[7] The cause was tried before the court without a jury, and this court may, in its discretion, reverse the cause and render a judgment here, or may remand the same for further proceedings.

It is insisted by counsel for appellee that should the court reverse the cause for any of the deficiencies in proof, insisted upon by the opposing counsel, that, in the exercise of discretion, judgment should not be here rendered, but the cause should be remanded so that these omissions may be supplied. Upon due consideration we have reached the conclusion that this is the proper course to pursue in the instant case.

For the errors indicated, the judgment of the court below will be reversed, and the cause remanded to the trial court for further proceedings therein.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.