(102 So. 45)

**MAXWELL PLANTING CO. v. A. P. LOVEMAN & CO.** (6 Div. 47, 47a.)

(Supreme Court of Alabama. Oct. 23, 1924. Rehearing Denied Nov. 27, 1924.)

1. **Sales** ⬅️184—Call for settlement for cotton purchased held sufficient.

Under contract for sale of cotton, price to be fixed at future day on basis of price for strict middling spot cotton in New Orleans, call for settlement naming price midway between reported prices of middling and good middling, *held* sufficient, naming of supposed price in notice being surplusage, not binding on either party, unless accepted by both; the purpose of call being to advise purchaser of date of settlement and whether seller elected return of cotton or settlement on reported price.

2. **Sales** ⬅️184 — Purchaser held to have waived irregularity in call for settlement.

Purchaser not objecting to form of call for settlement for cotton, but treating it as sufficient, as shown by his letter of same date, fixing price from his viewpoint, waived any irregularity in call.

3. **Customs and usages** ⬅️15(1)—Evidence of custom of settling for cotton on official spot quotations of New Orleans Exchange held admissible; "prices current."

Evidence of well-known trade custom or usage that cotton, sold at price to be fixed on basis of value of spot cotton, in New Orleans, be settled for on official spot quotations of that date, which are made by New Orleans Cotton Exchange under general supervision of federal Department of Agriculture, in maintenance of bona fide spot market, under Cotton Futures Act, §§ 5–8 (U. S. Comp. St. §§ 6309e–6309i) *held* admissible on issue of market or value of strict middling cotton in New Orleans on day of seller's call for settlement; such quotations, circulated daily through public press, becoming "prices current," which are presumptive evidence of value at place and time, under Code 1907, § 3977, citing 6 Words and Phrases, p. 5548, "Price Current."

[Ed. Note.—For other definitions, see Words and Phrases, Price Current.]

4. **Sales** ⬅️77(1)—Contract for sale at price on future date construed according to intent expressed when made.

Contract for sale of cotton at prices to be fixed on future date must be construed according to intent expressed on date when made, and cannot be influenced by unusual conditions in market on day of seller's call for settlement.

5. **Judgment** ⬅️251(1)—Judgment in amount contended for by neither party to action for balance due under contract of sale on call held erroneous.

Judgment in amount based on price contended for by neither party to action for balance due on cotton sold at price to be fixed on future date *held* erroneous; legal rights of parties and interest of public at large demanding finding on basis of value in keeping with contention of one side or other.

6. **Sales** ⬅️87(1)—Sale of cotton on basis of value in New Orleans on future date presumed to mean market value, according to official quotation on New Orleans Cotton Exchange.

Sale and delivery of cotton, at price to be fixed at future day on basis of value of spot cotton in New Orleans, is presumed to mean market value, ascertained, reported, and pub-

---

lished as official quotation on spot cotton on New Orleans Cotton Exchange, and burden of proof is on one asserting that different standard was intended.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Action by the Maxwell Planting Company against A. P. Loveman & Co. From the judgment, both parties appeal. Reversed and rendered, on direct appeal; affirmed on cross-appeal.

The contract, the basis of the suit, is as follows:

"Tuscaloosa, Ala., August 23, 1917.

"State of Alabama, Tuscaloosa County.

"Be it known that we, A. P. Loveman & Co. (a partnership composed of E. P. Loveman and D. L. Rosenau), doing business in the city of Tuscaloosa, Ala., and the Maxwell Planting Company (a corporation doing business in the county of Tuscaloosa), do by this agreement enter into the following contract:

"The Maxwell Planting Company agrees to deliver to A. P. Loveman & Co. (116) one hundred and sixteen bales of cotton now in warehouses in the city of Tuscaloosa, Ala. The said Maxwell Planting Company paying all charges on said cotton to date of delivery. The Maxwell Planting Company to have said cotton hauled to the warehouse of the Tuscaloosa Compress & Warehouse Company, where cotton is to be reweighed and each bale graded to the satisfaction of both parties to this contract.

"A. P. Loveman & Co. agree to advance to said Maxwell Planting Company 22¢ per pound on the gross reweights of said cotton after said cotton has been prepared for shipment and any damaged cotton picked off. Said A. P. Loveman & Co. charging no interest whatever on said advance. Said firm also agree to pay to said corporation, at time of paying over said money so advanced, the sum of one hundred and sixteen dollars ($116.00), the same being for the use of said cotton by A. P. Loveman & Co. to date of final settlement of this contract as hereinafter stated. The use of said cotton being loaned to A. P. Loveman & Co. by the Maxwell Planting Company from date of delivery to them to date when Maxwell Planting Company may call upon A. P. Loveman & Co. either for the return to them of an equal weight of cotton of an equal grade to these one hundred and sixteen (116) bales delivered to A. P. Loveman & Co. or for payment of such cotton at its market value on the day such payment is demanded. Said Maxwell Planting Company by this contract having the conceded right to call for such settlement on any date between October 1, 1917, and May 1, 1918. The market price being on the basis of the value of strict middling cotton (6's) in the city of New Orleans on that day less seventy-seven (77) points expenses from Tuscaloosa, Ala., to New Orleans, La. It is agreed between the parties to this contract that the difference between grades shall be one-quarter (¼) of a cent per pound.

"It is mutually agreed between the parties to this contract that if fluctuations of the market cause either party to desire margins to be paid them by the other party to keep themselves secure financially, said party so desiring has the right to demand such margin and the party upon whom the demand is made agrees to pay the proper amount to the party so demanding same.

"A. P. Loveman & Co. agree to comply with either demand made on them, as above, for a final settlement for the full value of said cotton after deducting the amount advanced by A. P. Loveman & Co. to said Maxwell Planting Company.

"(1) They will return cotton of equal weight and grade to cotton loaned for which the Maxwell Planting Company will pay them fifty (50) cents per bale provided Maxwell Planting Company wishes the cotton returned.

"(2) They will buy the weight and grade of cotton loaned at price on date called for as above provided for, if demanded, and pay said Maxwell Planting Company all the balance due them above amount advanced. In the event of the return to the Maxwell Planting Company of the cotton as specified in clause No. 1, the Maxwell Planting Company will return to A. P. Loveman & Co. all money advanced to them by A. P. Loveman & Co. except the one hundred and sixteen ($116.00) dollars paid to the Maxwell Planting Company by A. P. Loveman & Co. for the use of the cotton.

"In witness whereof, witness our hands and seals, this the 23d day of August, 1917.

"A. P. Loveman & Co.,
"Pr. E. P. L.
"D. L. Rosenau.
"Maxwell Planting Company,
"By Jas. R. Maxwell, Prest.
"James R. Maxwell.
"Witness: E. G. Parker."

Jones, Jones & Van De Graaff, of Tuscaloosa, for appellant.

Market reports are competent testimony of the market value of a commodity. Smith v. Railroad Co., 68 N. C. 107; 35 Cyc. 600; 13 Ency. Evi. 517. The contract being made with reference to a certain place or market, the parties are conclusively presumed to have contracted with reference to, and will be held to be bound by, a custom of trade prevailing at the place and in that market. 12 Cyc. 1057; Conner v. Robinson, 2 Hill (S. C.) 354; Jones v. Hoey, 128 Mass. 585; Thompson v. Brannin, 94 Ky. 490, 21 S. W. 1057; Loeb v. Crow, 15 Tex. Civ. App. 537, 40 S. W. 506; Samuels v. Oliver, 130 Ill. 73, 22 N. E. 499; Charlotte Oil & F. Co. v. Hartog, 85 Fed. 150, 29 C. C. A. 56; Bullock v. Finley (C. C.) 28 Fed. 514; Lyon v. Lennon, 106 Ind. 567, 7 N. E. 311; Guesnard v. L. & N., 76 Ala. 453; Union Stockyards v. Mallory, 157 Ill. 554, 41 N. E. 888, 48 Am. St. Rep. 341; Austrian Co. v. Springer, 94 Mich. 343, 54 N. W. 50, 34 Am. St. Rep. 350; Walls v. Bailey, 49 N. Y. 464, 10 Am. Rep. 407; Cooper & Boykin v. Berry, 21 Ga. 526, 68 Am. Dec. 468; Smith v. Wright, 1 Caines (N. Y.) 43, 2 Am. Dec. 162; McMasters v. Penn. R. Co., 69 Pa. 374, 8 Am. Rep. 264; Farrar v. Stackpole, 6 Greenl. (Me.) 154, 19 Am. Dec. 201;

Bowman v. First Nat. Bank, 9 Wash. 614, 38 P. 211, 43 Am. St. Rep. 870.

Clarkson & Penick, of Tuscaloosa, for appellee.

The demand must conform to the terms of the contract. 13 C. J. 662; Leiter v. Emmons, 20 Ind. App. 22, 50 N. E. 40; 6 R. C. L. 949. The market price as quoted by the exchange was fictitious, there having been no buying and selling. 5 Words and Phrases, 4382; 1 Greenleaf on Evi. (16th Ed.) 9.

BOULDIN, J. The suit is to recover the balance due on 116 bales of cotton sold by Maxwell Planting Company to A. P. Loveman & Co. by contract in writing dated August 23, 1917.

The cotton was cleaned up, weighed, graded, and delivered, and the advance payments were made as agreed. There is no dispute as to any of these matters.

Two questions only are involved, viz.: (1) Whether there was a sufficient call for settlement as per contract. (2) What was the "market value" on the day payment was demanded, April 19, 1918, "the market price being on the basis of the value of strict middling cotton (6's) in the city of New Orleans on that day less seventy-seven (77) points expenses from Tuscaloosa, Ala., to New Orleans, La."

[1] Taking up the first question, the evidence shows the following:

On April 19, 1918, James R. Maxwell, president of plaintiff company, was in the office of defendant company in Tuscaloosa when the report of the market for spot cotton in New Orleans was received by wire. The telegram was handed to Mr. Maxwell by Mr. Parker, manager of defendant's Tuscaloosa office. This report quoted middling cotton at 33 cents, and good middling at 34¾ cents, not giving the price of strict middling. Maxwell thereupon stated to Mr. Parker, "I will close out to-day that 116 bales of cotton," and handed him a written notice, saying:

"In conformity with the terms of our contract with you, dated August 23, 1917, in the matter of 116 bales of cotton, we hereby call upon you for settlement for the cotton on the basis, as quoted by the New Orleans Cotton Exchange of 33.625 cents per pound for strict middling spot cotton in New Orleans."

The objection raised to this call is that it demands settlement on a price basis in excess of the value of strict middling spot cotton in New Orleans that day. What was the true value under the contract arises under the second inquiry to be discussed later. The demand placed the price of strict middling cotton midway between middling and good middling as quoted in the telegram.

We conclude the call was sufficient, for the following reasons:

[2] Under the contract the purposes of the call were: (1) To advise the purchaser of the date of call; (2) to elect whether cotton of like quantity and grade should be returned, or settled for on the price basis stipulated. The notice given furnished this information. 13 C. J. p. 661, § 745, and notes. The price basis for settlement was already fixed by contract, and, naming the supposed price in the notice was surplusage, not binding on either party unless accepted by both. Moreover, no objection to the form of the call was made at the time, but was treated as sufficient, as shown by letter from defendant of same date fixing the price of the cotton sold from defendant's viewpoint. This would constitute a waiver of any irregularity in the call. The case is different in principle from that presented in Leiter v. Emmons, 20 Ind. App. 22, 50 N. E. 40, where the contract called for payment in specific personal property, and the demand did not conform thereto.

[3] The major question for our decision is, the market price or value of strict middling cotton in New Orleans on the day of the call, April 19, 1918.

The contract was between producer and buyer, and it is agreed that the contract related to the market price of spot cotton in New Orleans. James R. Maxwell and E. P. Loveman, who negotiated and signed the contract for the parties, were both experienced cotton men, members or former members of the New Orleans Cotton Exchange, and familiar with the rules regulating spot quotations in the New Orleans market.

The plaintiff claims the market price or value was fixed by the official quotation of strict middling spot cotton as ascertained, reported, and published by the New Orleans Cotton Exchange through its committee on spot quotations. Thus quoted, the value was 33.88 cents per pound.

The view of defendant is expressed in its letter to plaintiff dated April 19, 1924, as follows:

"In compliance with your request we advise having to-day fixed price on the one hundred and sixteen (116) bales cotton sold us under contract of August 23, 1917.

"We are advised that strict middling was traded in at New Orleans to-day at three hundred (300) points on May in that market. This would be 31¢ for strict middling in New Orleans based on the close of that market to-day."

The record presents voluminous testimony, and objections thereto, touching the issue thus presented. A general outline will suffice.

The by-laws of New Orleans Cotton Exchange (art. 7) provided for daily quotations of spot cotton as follows:

"Article VII.

"A committee on spot quotations to consist of not less than three (3) members of the board of classers shall be appointed annually by the board of directors at its first meeting in December, and vacancies in said committee from any cause shall be filled by the board of directors as occasion may require. It shall be the duty of said committee to meet at such hours as may be designated by the board of directors and a majority of the members thereof shall constitute a quorum.

"At each daily meeting, the committee shall establish and announce the quotations for spot cotton as sold in this market by factors and others on spot terms which shall show the actual commercial differences between grades in the manner and under the conditions prescribed in the United States Cotton Futures Act, § 6, and in accordance with such rulings as the Secretary of Agriculture may from time to time promulgate.

"Whenever the value of one grade is to be determined from the sale or sales of spot cotton of another grade or grades, such value shall be fixed in accordance with rules and regulations which shall be prescribed for the purpose by the Secretary of Agriculture. The committee may at their discretion take into consideration bona fide officers to buy or sell spot cotton and base their quotations accordingly.

"All quotations shall be based upon the standards of this market as adopted by this Exchange and said quotations shall be posted prominently in the Exchange rooms."

Pursuant to these rules the members of the committee on spot quotations, accompanied by a representative of the United States Department of Agriculture, call upon cotton factors and obtain reports of sales and purchases of spot cotton each day. The resultant of these sales is made their report on the prices of spot cotton, which is posted on the floor of the Exchange. These quotations go out by wire, and are published in the daily press throughout the cotton belt.

On the day in question there were no sales of spot cotton in New Orleans to be taken as a basis for quotation. Under the rules, the committee was authorized in such case to investigate and take into account bona fide offers to sell or to purchase in fixing the market price of spot cotton. The report for that day showed: "Market. Nominal sellers refusing to make concessions." It appears the future market had been on the decline for some days. Holders of spot cotton refused to break the market established several days before, and spot quotations were held by the committee at the same figures. These figures represented the price at which spot cotton could be bought, but above what purchasers would pay. Spot cotton was not moving.

It further appears that on the day of the call some 230 bales of "hedged" cotton were sold in New Orleans. One lot of 100 bales strict middling was sold for $31.15.

Under a rule of the Exchange then in force, sales of "hedged" cotton could not be considered nor taken into account in fixing spot quotations. Two reasons are given for this rule:

(1) Cotton on hand, which is hedged by the sale of a future contract, may, on a decline in the future market, be sold at a price which the holder would not otherwise accept, and still realize a profit on the whole transaction. The status of such cotton is considered fixed as of the date it is hedged, and the sale on a later date is but a liquidation of a previous transaction.

(2) To prevent price manipulation and fraud, as, for example, selling spot cotton at a low price to establish a spot quotation, enabling the seller to realize a larger profit on his transactions in futures.

All parties agree this was a law of the Exchange. The defendant insists that, in the absence of other spot sales, the price of hedged cotton is the best evidence of the market price at which cotton can be sold on that day. On the other hand, it is not seriously questioned that sales of "hedged" cotton may and do occur at a price below that for which unhedged spot cotton can be bought on that day.

There is some evidence that the market price or value of spot cotton was figured at so many points on or off the price of future contracts for the hedge month, and that a trade custom existed to that effect in the New Orleans market.

The weight of the evidence, however, is to the effect that by a well-known trade custom or usage a sale of cotton, at a price to be fixed on a future date on the basis of the value of spot cotton in New Orleans on that day, is to be settled for on the official spot quotations of that date. This evidence was properly admitted. Loval v. Wolf, 179 Ala. 505, 60 So. 298; Buyck & Cain v. Schwing, 100 Ala. 355, 14 So. 48; Haas & Bro. v. Hudmon Bros. & Co., 83 Ala. 174, 3 So. 302; Guesnard v. L. & N. R. R. Co., 76 Ala. 453; Barlow v. Lambert, 28 Ala. 704, 65 Am. Dec. 374; 17 C. J. p. 462, § 20; Id. p. 464, § 26; Id. p. 503, § 66, and notes.

We adopt the above as the law of the case before us, for the following additional reasons: The spot quotations on the New Orleans Exchange have an official or quasi official character. The United States Cotton Futures Act makes the values of spot cotton the basis of settlement on contracts for future delivery as to the differential between grades above and below the basis grade. Spot quotations are made under the general supervision of the United States Department of Agriculture, and in the maintenance of a "bona fide spot market" under the provisions of the Cotton Futures Act. U. S. Stat. at Large, vol. 39, part 1, p, 476 et seq., §§ 5, 6, 7, 8 (U. S. Comp. St. §§ 6309e–

6309i). This act evinces a policy that the market value of spot cotton shall dominate the price of futures, rather then futures dominate the price of spot cotton.

The spot quotations of the New Orleans Cotton Exchange, printed and circulated daily through the public press become "prices current," an informing agency to all those interested in current prices of this staple product. "Prices current and commercial lists, printed at any commercial mart, are presumptive evidence of the value of any article of merchandise specified therein, at that place, at the date thereof." Code of Alabama, 1907, § 3977; 6 Words and Phrases, First Series, "Price Current," p. 5548; 22 C. J. p. 188, § 152.

[4] The contract between these parties must be construed according to the intent expressed therein on August 23, 1917, when it was made, and cannot be influenced by unusual conditions in the market on the day of the call, April 19, 1918. The New Orleans market was made the controlling market by the contract of the parties. We may assume one purpose was certainly therein—a standard market reported daily, and easily ascertained. It appears the market price furnished by plaintiff to defendant, upon which the call was made, was the spot market published that day on the Exchange in regular course. It further appears the letter from defendant to plaintiff claiming 31 cents as the basis of settlement was posted on April 21st, after receiving a telegram from New York giving directions to that effect.

[5] The cause was heard by the trial judge, without a jury. Evidence was taken both orally and by deposition. The amount of the judgment rendered indicates the court accepted the price basis of neither party. It approximates more nearly the basis of value presented by plaintiff than by defendant. Both parties appeal.

We think under the evidence and principles of law applicable the legal rights of these parties, as well as a settled construction of such contracts, demand a finding of the basis of value in keeping with the contention of one side or the other. There seems to be no substantial ground for a third position in the matter. These parties and the public at large should know the legal meaning of contracts of sale on call of this class.

[6] Accordingly, we find that on a sale and delivery of cotton, the price to be fixed at a future day on the basis of the value of spot cotton, in the City of New Orleans on that day, is presumed to mean the market value ascertained, reported, and published as the official quotation on spot cotton on the New Orleans Cotton Exchange. The burden of proof is on him who asserts

that a different standard of value was intended.

For error in the amount thereof, the judgment of the court below is reversed, and a judgment will be here rendered in favor of appellant, Maxwell Planting Company, for the amount now ascertained to be due, viz. the sum of $2,882.19, with interest thereon from April 19, 1918, to this date, being the aggregate sum of $4,383.48, together with the costs of suit in this court and the court below. On cross-appeal the cause is affirmed.

Reversed and rendered, on direct appeal; affirmed on cross-appeal.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.