HOLMES, Judge.
This is a breach of contract case.
Plaintiff, Alpha Coal Company, brought an action against defendant, National Cement Company, for breach of contract. The ease was submitted to a jury which determined the issues in favor of the plaintiff and awarded it damages. Subsequent to the jury verdict the plaintiff made a motion for a new trial on the basis of the inadequacy of the damages. The motion was denied and the plaintiff appeals to this court. We reverse.
On February 2, 1977, Alpha Coal Company entered into a contract with National Cement Company whereby, for a period of three years, Alpha was to furnish National with the coal it required to fuel its operation. The contract set out the approximate daily tonnage of coal that National would require, as well as the mine from which the coal was to be delivered and the specifications the coal must meet. The price term of the contract was as follows:
“Price to be $29.50, delivered Ragland, per net ton of 2,000 pounds as received based on National’s scale weight. Escalation of price to be based on direct pass-through of increase in price of fuel and explosives and increase in UMW royalty, if any, to be reviewed quarterly.”
Alpha made deliveries to National through August 29, 1977. On September 21, 1977, National sent a letter to Alpha cancelling the contract. The reason for the cancellation, as stated in the letter, was the failure of the coal being delivered by Alpha to comply with the specifications and economic terms of the contract.
On September 5, 1978, Alpha instituted this action for breach of contract against National. The complaint alleged that National had breached the contract on September 21, 1977, by failing to purchase coal from Alpha as required by the contract. Alpha demanded judgment against the defendant in the amount of $250,000. National answered by generally denying that it had breached the contract and affirmatively contended that Alpha had breached the contract.
The case was tried before a jury on December 11 and 12, 1981. After considering the evidence, the jury found the issues in favor of the plaintiff, Alpha, and assessed plaintiff’s damages at $4,875. Plaintiff appealed to this court following the denial of its motion for a new trial.
The basic issue that this court must decide on appeal is whether the learned trial judge erred in not granting plaintiff’s motion for a new trial. The plaintiff contends that the trial court erred in not granting a new trial because (1) the damage award was contrary to the evidence in the case and (2) the damage award was not responsive to the issues tried and the instructions given.
Because National does not appeal from the jury’s determination that it breached the contract, the only evidence that is pertinent to the issues present is the evidence concerning the damage that Alpha suffered because of National’s breach. This evidence can be briefly summarized as follows: As stated earlier, at the time the contract was entered into National was to pay Alpha $29.50 per ton for the coal delivered to it. The cost to Alpha for procuring the coal and delivering it to National was $28.00 per ton. Thus, Alpha made a profit of $1.50 per ton.
At some point after the parties entered into this contract fuel costs and UMW roy *277 alties increased. Consequently, the price Alpha paid for procuring and delivering the coal increased to $30.00 per ton. In April, 1977, with the consent of National’s representatives, Alpha increased the price National was to pay for the coal delivered to it to $31.50 per ton. Again, Alpha was making a profit of $1.50 per ton.
In August, 1977, the cost to Alpha for procuring and delivering the coal increased to $32 per ton. The record does not specifically reveal the reason for the cost increase though the increase did come at a time of unrest in the coal industry and the increase was apparently due to demands made by the miners. Without the consent of National’s representatives, Alpha increased the price National was to pay to $33.50 per ton. National paid the increased price under protest until the shipments ceased on August 29, 1977.
Alpha contends that the foregoing evidence establishes that it was the intention of the parties to this contract that Alpha receive a profit of $1.50 per ton of coal that it delivered to National. Alpha introduced evidence that, from September, 1977, until February, 1980, when the contract was to expire, National received approximately 102,163 tons of coal. According to Alpha, at a profit per ton of $1.50, this would mean that Alpha lost in excess of $150,000 of profit due to National’s breach.
National, through able counsel, contends however that the foregoing evidence did not establish that Alpha was to make a profit of $1.50 per ton. National stresses that at no place does the contract guarantee Alpha a profit of any amount and that the parties did not intend to guarantee Alpha a profit. National further contends that, because no one from National agreed to the August, 1977, price increase to $33.50, Alpha could not collect that amount under the terms of the contract and, consequently, Alpha would have been operating at a loss.
The trial court instructed the jury that if they determined that the plaintiff was entitled to a recovery, the plaintiff was only entitled to recover such profits as the plaintiff would have made had the defendant not cancelled the contract. Presumably, with these instructions in mind, the jury returned a verdict for the plaintiff and awarded damages of $4,875. Handwritten on the jury verdict was the following: “250 tons per day September 8, 1977 through September 21, 1977. 13 days 6% interest.”
It is firmly established in this state that on appeal, all favorable presumptions are afforded the correctness of jury verdicts and that such verdicts will not be disturbed unless clearly divergent from the evidence and the law. Baswell v. Wilks, 57 Ala.App. 98, 326 So.2d 292 (1976). This presumption is further strengthened where the trial court refuses to grant a new trial. Birmingham Southern R. Co. v. Ball, 271 Ala. 563, 126 So.2d 206 (1961). It is also firmly established that the jury must return a verdict that is supported by the evidence and is responsive to the issues and instructions. Posey v. Myers, 370 So.2d 986 (Ala.1979); Booth v. S. and H. Laboratories, Inc., 39 Ala.App. 615, 105 So.2d 879 (1958).
Considering both of these principles, this court concludes that the verdict returned by the jury in the instant case is erroneous and that the trial court erred in refusing to grant a new trial.
As indicated above, the plaintiff contends that the damage award conferred by the jury was contrary to the evidence. The verdict must be supported by the evidence and the judge’s instructions on the law. The jury is not free to return an arbitrary or improper verdict based on their personal feelings concerning the merits or contentions of one party or the other. Their reasoning must be based on the judge’s instructions on the law and applied to the evidence presented. The jury is not free to disregard the judge’s instructions to them. Booth v. S. and H. Laboratories, Inc., supra.
Our review of the record leads to the conclusion that the jury disregarded the judge’s instructions concerning the computation of damages. They were instructed to determine the damages caused by the breach of contract based on the profits *278 plaintiff would have made had the breach not occurred. The judge charged the jury as follows:
“The law, I feel, only requires that the plaintiff, if you feel that the plaintiff is entitled to recover, that he is only entitled to recover such profits as he would have made had the defendant not can-celled the contract. You base that strictly on the evidence that you heard during the course of this trial.”
If the jury had believed the evidence regarding damages most favorable to the plaintiff, they could have found that the plaintiff would have earned so much on the ton. If, however, the jury had believed the evidence regarding damages more favorable to the defendant, they could have returned only nominal damages at best. Instead, the jury returned with the damages assessed at $4,875. And while it may be surplusage, the fact remains that the jury wrote on the verdict that they based their figure on the period from September 8, 1977 through September 21, 1977, a period of time that was not in contention by either party. It is clear from the above that the jury disregarded the evidence and the instructions presented to them.
This situation is very similar to a line of cases best represented by In re Farmers and Ginners Cotton Oil Co. v. Reliance Insurance Co., 341 So.2d 147 (Ala.1976); Maxwell Planting Co. v. A. P. Loveman and Co., 212 Ala. 228, 102 So. 45 (1924).
In Maxwell Planting, the distinguishing feature from the instant case is the fact that a trial judge heard the case without a jury. However, the principle of law set forth in the opinion applies with equal, if not greater, force to a jury verdict. The disputed issue concerned the price that was to be paid for cotton on call in a contract for sale. Both parties presented conflicting evidence pertaining to the price. The trial court refused to accept either party’s contention and awarded a sum that neither had contended. The supreme court, in reversing the trial court’s judgment, stated that the evidence and legal principles involved “demand a finding of the basis of value in keeping with the contention of one side or the other. There seems to be no substantial ground for a third position in the matter.” 212 Ala. at 232, 102 So. at 48.
Farmers and Ginners Cotton Oil Co. also held that where a jury verdict cannot be justified on any reasonable construction of the evidence, it should be set aside.
In view of the above, the jury verdict cannot stand and the trial court’s denial of the motion for new trial should be reversed. In view of the above, other issues present are pretermitted.
REVERSED AND REMANDED.
WRIGHT, P. J., and BRADLEY, J., concur.