671 So.2d 86 (1995)
Edward J. DERWINSKI, Secretary of the Department of Veterans Affairs, and Dunn and Company Real Estate
v.
Nick NICHOLS.
AV93000819.
Court of Civil Appeals of Alabama.
May 19, 1995.
Rehearing Denied July 14, 1995.
Certiorari Denied December 1, 1995.
*87 Fulton S. Hamilton of Hamilton, Gardner & Webster, P.C., Huntsville, for appellants.
*88 Clement J. Cartron, Huntsville, for appellee.
Alabama Supreme Court 1941647.
MONROE, Judge.
Edward J. Derwinski, in his capacity as secretary of the Department of Veterans Affairs ("VA") sued Nick Nichols. In its complaint, the VA alleged that from March through June 1992 Nichols had resided in, and had caused damage to, a house owned by the VA and he had done so without just cause or lawful right and without compensating the VA for his use and enjoyment of the house and for the alleged damage thereto. The VA sought a judgment against Nichols in the amount of $2,341.67. Nichols answered, contending that he had been in lawful possession of the house pursuant to a valid lease from the previous owner, and without notice of a foreclosure by the VA. Additionally, Nichols filed a counterclaim against the VA and Dunn & Company Real Estate ("Dunn") seeking damages for an alleged conversion of his personal property.
The VA and Dunn answered Nichols's counterclaim, denying conversion and asserting as defenses, abandonment and trespass.
The counterclaim filed against the VA was dismissed because of governmental immunity, leaving only the VA's claim against Nichols and Nichols's claim of conversion against Dunn.
The jury found that the VA had proven its use and occupation claim and the jury awarded $1 in damages, and it awarded Nichols $3,600 in compensatory damages and $7,300 in punitive damages, on his conversion claim against Dunn. A judgment was entered according to the jury's verdict.
The VA and Dunn filed a post-judgment motion contending, among other things, that the jury's verdict was inconsistent, contrary to the great weight and preponderance of the evidence, and inadequate in its award to the VA. After an evidentiary hearing, the court denied the post-judgment motion. The VA and Dunn jointly appealed to the Supreme Court, which transferred the case to this court pursuant to Ala.Code 1975, § 12-2-7(6).
The VA and Dunn make two contentions on appeal. They contend that the trial court committed reversible error in denying the post-judgment motion because, they say the jury's award to the VA was inadequate, and (2) the jury's verdicts were inconsistent.
The pertinent facts are as follows: E.M. Stairs purchased a house located in Huntsville, financing the purchase with a VA-guaranteed loan. Stairs rented the house to Nick Nichols.
In March 1992, Stairs defaulted on his loan; the VA paid the remaining $43,634 owed on the loan, and took title. Then, the VA assigned the management of the house to Dunn. The VA guidelines required that Dunn determine if anyone was living in the house. If it was occupied, Dunn was not to take any dispossessory action, but Dunn was to monitor the premises until the house was obviously abandoned.
Dunn determined that Nichols occupied the home. In late May or early June, Dunn telephoned Nichols and threatened that "[W]e're in the process of having the sheriff to come out and set your stuff on the street..."
On June 19, 1992, Nichols was married. Upon returning from his honeymoon, Nichols discovered a lock box on the door of his home and discovered that his personal property was missing.
On June 30, 1992, Nichols confronted the Dunn owners at the home and demanded to know where his possessions were. The owners of Dunn stated that everything had been thrown away, except his paintings.
Although the VA's brief argues several points, the first issue primarily concerns the adequacy of the verdict awarded by the jury after it found for the VA on its claim for use and occupation.
At the outset, we note that a jury verdict is presumed to be correct and should not be set aside on the ground of inadequacy of damages unless the amount is so inadequate as to plainly indicate that the verdict was the result of passion, prejudice, or improper motive. Brown v. Foster, 636 So.2d *89 468 (Ala.Civ.App.1994); Nemec v. Harris, 536 So.2d 93 (Ala.Civ.App.1988).
Additionally, a strong presumption of correctness applies to a trial court's refusal to set aside a jury verdict, and we will not reverse absent a showing that the verdict was clearly wrong or unjust. Brown, 636 So.2d 468; Nemec, 536 So.2d 93; O'Daniels v. Bates, 456 So.2d 807 (Ala.Civ.App.1984).
Moreover, the assessment of damages is a matter largely within the discretion of the jury, and it is solely the jury's right to consider all the evidence presented, to determine the credibility of the testimony of each witness, and to draw inferences therefrom. Kite v. Word, 639 So.2d 1380 (Ala.Civ.App. 1994).
However, a verdict must include an amount at least as high as the uncontradicted amount of loss or damage. Nemec, 536 So.2d 93 (Ala.Civ.App.1988).
The facts clearly show that the amount of the loss or damage the VA incurred, if any, was in dispute. The number of months for which the VA may have been entitled to rent was disputed. There was disputed testimony as to when the VA notified Nichols that it owned the house.
Further, the VA's contract provided that all rents and profits collected, after deducting the cost of collection, would be applied to the debt associated with the house; however, at trial, the VA's representative testified that the house had been sold for a profit of $3,959. The jury could have reasonably concluded that the VA was entitled to damage for use and occupation, but had failed to prove any actual damages. Therefore, we find no error in the trial court's rejection of the VA's argument that the jury awarded it inadequate damages.
Next, the VA and Dunn challenge the verdicts as being inconsistent specifically arguing that because the jury determined that the VA was entitled to damages for use and occupation, then the jury could not logically also determine that Nichols had proven his conversion claim.
A conversion occurs when one wrongfully takes, detains, interferes with, misuses, or assumes ownership of, the property of another in defiance of the owner's rights. Stallworth v. Continental Real Estate Management, Inc., 582 So.2d 534 (Ala. 1991). While the VA may have been entitled to possession of the house, it did not own, or have the right to use or dispose of, Nichols's personal property. Stallworth, 582 So.2d 534.
Dunn, the VA's agent, admitted disposing of Nichols's personal property. Clearly, Dunn was prohibited from entering the house and disposing of Nichols's personal property. Obviously, the jury concluded that the VA owned the house, but that its agent, Dunn, was not entitled to enter the house and dispose of Nichols's property.
It is within the jury's discretion to assess the appropriate amount of damages. Kite v. Word, 639 So.2d 1380 (Ala.Civ.App.1994). The evidence supports the $3,600 awarded in compensatory damages. We find that that award was not excessive, and it does not appear to be based on bias or prejudice.
Generally, an award of punitive damages is proper in a conversion case "where the evidence shows legal malice, willfulness, insult, or other aggravating circumstances." Rainsville Bank v. Willingham, 485 So.2d 319, 324 (Ala.1986); quoting Ray Hughes Chevrolet, Inc. v. Gordon, 294 Ala. 638, 639, 320 So.2d 652, 654 (1975); Roberson v. Ammons, 477 So.2d 957 (Ala.1985). Further, a jury's award of punitive damages is to punish the wrongdoer and to prevent similar wrongs from being committed in the future. Roberson, 477 So.2d 957.
There was ample evidence from which the jury could find that Dunn acted willfully and intentionally in disposing of Nichols's property. Further, Dunn had had much experience managing VA foreclosed properties and had been furnished with the VA guidelines; yet, at trial Dunn testified that it was Dunn's normal operating practice to dispose of personal property found in residences that had been subject to VA foreclosure. Based on the testimony before the *90 jury, we conclude that the award of $7,300 in punitive damages was not excessive.
After thoroughly reviewing the record, we cannot conclude that the award of $1 in damages to the VA was inadequate, and we cannot conclude that the awards of compensatory and punitive damages against Dunn were inconsistent, with the finding for the VA, or that those awards were excessive. Therefore, the trial court did not err in denying the VA and Dunn's post-judgment motion. The judgment is due to be affirmed.
Nichols's request for an attorney fee is hereby denied.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.
THIGPEN and CRAWLEY, JJ., dissent.
THIGPEN, Judge, dissenting.
The VA alleged in its complaint that Nichols had occupied, resided in, and caused damage to certain real property owned by the VA, without just cause or lawful right, without permission from the VA, and without compensating the VA for his use and enjoyment of the property and the damage caused thereto. The VA demanded a judgment against Nichols for the reasonable rental value of the property during the time of Nichols's alleged unlawful occupation and for the alleged damage. Nichols answered, contending that he was in lawful possession of the property pursuant to a valid lease with the previous owner. In his counterclaim, Nichols alleged that the VA and Dunn, acting individually and as the VA's agent, had converted to their own use certain real property leased and occupied by him, and certain personal property belonging to him. He sought compensatory and punitive damages and costs. The VA and Dunn answered Nichols's counterclaim, asserting abandonment and trespass as affirmative defenses.
The salient facts which I deem to control the disposition of this case are as follows: In 1985, when E.M. Stairs purchased this property, he obtained a VA mortgage. In July 1991, Stairs leased the property to Nichols for one year. In March 1992, the mortgage was foreclosed, the VA received title to the property, and the VA assigned Dunn as management broker of the property, with Dunn assuming specific duties and responsibilities pursuant to the VA's instructions and guidelines.
Dunn's witness testified that after the foreclosure, Stairs was contacted to ascertain the identity of the occupant of the property. Rosa Dunn, who is associated with Dunn, testified that she contacted Nichols by telephone on March 13, 1992, to advise him that the lease would not be honored by the new owner, that he had to vacate the property, and that he would be receiving a letter to that effect from the VA. Testimony and evidence indicated that repeated, unsuccessful attempts were made, including via certified mail and hand delivery, to provide Nichols with written notification.
Stairs testified that in December 1991, he informed Nichols that he was selling the property, and he offered Nichols the opportunity to purchase it. Stairs further testified that sometime later, he informed Nichols that the property was being foreclosed. Nichols denied that Stairs informed him regarding the foreclosure. Although Stairs testified that Nichols ceased paying rent after foreclosure in March 1992, Nichols testified that he did not receive notice of the foreclosure until mid-May 1992, and that he began removing his personal belongs from the foreclosed property afterwards.
Rosa Dunn testified that, based upon her observation regarding active utility service, she concluded that Nichols was occupying the property during the first week of June 1992, but that later that month, the property appeared to be abandoned, so Dunn began cleaning it. Dunn provided testimony that, based on over 34 years of experience, it observed the things that usually indicated abandonment, including discontinued utilities, overgrown grass and weeds, the presence of scattered trash and debris, and the absence of furniture, clothing, and dishes. A locksmith testified that when he was on the premises, he observed nothing to indicate that the property was occupied. A utility representative testified that although Nichols had utility service connected at a new residence *91 in mid-May, Nichols did not have the utility service disconnected at the foreclosed property until June 12, 1992. A VA representative testified that the VA never received any rent payments from Nichols, and it is undisputed that the fair rental value was $350 per month. A police officer testified that Nichols had filed a report, alleging that several expensive items previously located at the property were missing.
Although the VA's brief raises several arguments, it is well-settled that a party receiving a verdict and judgment in its favor can bring an appeal only to question the amount of damages. DeBardeleben v. Tynes, 290 Ala. 263, 276 So.2d 126 (1973); Prescott v. Fletcher, 379 So.2d 333 (Ala.Civ.App.1979).
Jury verdicts are presumed to be correct, and this presumption is further strengthened when the trial court has denied a motion for new trial. Ashbee v. Brock, 510 So.2d 214 (Ala.1987); Kinard v. Davis, 594 So.2d 157 (Ala.Civ.App.1992); Posey v. McCray, 594 So.2d 152 (Ala.Civ.App.1992). Appellate courts must view the evidence most favorably to the prevailing party, and a judgment based on a verdict may not be reversed on appeal unless it is plainly and palpably wrong. Ashbee, 510 So.2d 214. A court hesitates to use its inherent power to set aside a jury verdict, because the right to trial by jury is a most precious right. See O'Daniels v. Bates, 456 So.2d 807 (Ala.Civ.App. 1984). Yet, the trial court has a duty to grant a new trial for inadequate or excessive damages if the verdict is clearly unjust. Stinson v. Acme Propane Gas Co., 391 So.2d 659 (Ala.1980). Furthermore, a jury is not at liberty to disregard or ignore undisputed testimony or evidence. Jones v. Butts, 646 So.2d 104 (Ala.Civ.App.1994). "The verdict must be consistent and the damages awarded must be reasonably proportionate to the injury." Stinson, 391 So.2d at 661. Further, if a verdict for damages significantly varies from the uncontradicted opinion of value, it cannot stand. O'Daniels, 456 So.2d 807. Damages that do not sufficiently compensate for proven losses or damage are considered to be inadequate. Kinard, 594 So.2d 157.
Once the jury found in favor of the VA on its claim that Nichols was liable for unlawful use and occupation of the VA's property, the jury was required to rely on the uncontradicted evidence regarding the fair rental value of the property for the time occupied. While a jury is afforded discretion in its award of damages, it is not free to return arbitrary or improper verdicts based upon extraneous matters, and its verdict must be supported by the evidence and based on the applicable law. Stinson, 391 So.2d 659; Alpha Coal Co. v. National Cement Co., 420 So.2d 275 (Ala.Civ.App.1982). The VA was entitled to recover an amount at least equal to its uncontradicted damages. See Jones, 646 So.2d 104.
It appears of record that at the hearing on the post-judgment motion, even Nichols's attorney agreed that the verdict and judgment may be reversible error:
"[Nichols's attorney]: Your Honor, first of all I want to address one thing in his motion that the [VA] is concerned about, and that is the inadequacy of damages that would have been awarded to the VA, it being set by the jury at $1. I want it abundantly clear that we agree that that may be reversible error unless this Court entertains that."
The trial court's judgment denying the motion for new trial based upon the inadequacy of damages is reversible error. Kinard, 594 So.2d 157.
The VA and Dunn also challenge the inconsistency of the verdicts, specifically arguing that the jury's verdict favoring Nichols on his counterclaim and awarding compensatory and punitive damages is inconsistent with the verdict favoring the VA on its use and occupation claim.
In his counterclaim, Nichols alleged that Dunn, acting individually and on behalf of the VA, converted the leased premises occupied by Nichols "by exercising dominion and control over said property in exclusion or defiance of [Nichols's] rights." Nichols also alleged that Dunn converted some of his personal property. Inherent in the jury's finding for the VA on its claim against Nichols was the finding that Nichols was in unlawful possession of the VA's property without just cause or lawful right, and without *92 VA's permission. To first find that the VA was legally entitled to possession of the property, and then to find on Nichols's counterclaim that the VA, via its agent, had converted the same property by entering it to do what was necessary to possess it, is not consistent.
Simply, Dunn, as VA's agent, had lawful right to enter the property upon apparent abandonment, to secure the property for the VA. After abandonment, Dunn could take the necessary steps to possess the property and prevent its destruction. The record indicates that Dunn started monitoring the property in March 1992, after foreclosure, and only acted to secure the property after it appeared to have been abandoned in late June 1992.
The record also contains testimony regarding Nichols's claim for disposition of his personal belongings. Rosa Dunn testified that "[i]t looked as if somebody had moved out and left just trash and garbage." James Dunn testified that he "looked around, and it was typical. It looked like somebody had left the house and this is what they left.... These foreclosed houses, most of them have the same type stuff in them." Additionally, the locksmith testified that "the part of the house that I saw was completely bare and I did not see one thing." It is noteworthy that Nichols did not offer or produce any receipts, warranty cards, or any other documentation indicating his ownership of any of the items that he claimed Dunn had wrongfully removed from the house. A jury verdict that is inconsistent and contradictory "should be set aside and a new trial granted." Owens v. Lucas, 604 So.2d 389, 391 (Ala.1992). It is my opinion that the verdicts on the conflicting claims are inconsistent, and therefore, it was error for the trial court to deny a new trial. Accordingly, I must respectfully dissent.
CRAWLEY, J., concurs.