The VA alleged in its complaint that Nichols had occupied, resided in, and caused damage to certain real property owned by the VA, without just cause or lawful right, without permission from the VA, and without compensating the VA for his use and enjoyment of the property and the damage caused thereto. The VA demanded a judgment against Nichols for the reasonable rental value of the property during the time of Nichols's alleged unlawful occupation and for the alleged damage. Nichols answered, contending that he was in lawful possession of the property pursuant to a valid lease with the previous owner. In his counterclaim, Nichols alleged that the VA and Dunn, acting individually and as the VA's agent, had converted to their own use certain real property leased and occupied by him, and certain personal property belonging to him. He sought compensatory and punitive damages and costs. The VA and Dunn answered Nichols's counterclaim, asserting abandonment and trespass as affirmative defenses.
The salient facts which I deem to control the disposition of this case are as follows: In 1985, when E.M. Stairs purchased this property, he obtained a VA mortgage. In July 1991, Stairs leased the property to Nichols for one year. In March 1992, the mortgage was foreclosed, the VA received title to the property, and the VA assigned Dunn as management broker of the property, with Dunn assuming specific duties and responsibilities pursuant to the VA's instructions and guidelines.
Dunn's witness testified that after the foreclosure, Stairs was contacted to ascertain the identity of the occupant of the property. Rosa Dunn, who is associated with Dunn, testified that she contacted Nichols by telephone on March 13, 1992, to advise him that the lease would not be honored by the new owner, that he had to vacate the property, and that he would be receiving a letter to that effect from the VA. Testimony and evidence indicated that repeated, unsuccessful attempts were made, including via certified mail and hand delivery, to provide Nichols with written notification.
Stairs testified that in December 1991, he informed Nichols that he was selling the property, and he offered Nichols the opportunity to purchase it. Stairs further testified that sometime later, he informed Nichols that the property was being foreclosed. Nichols denied that Stairs informed him regarding the foreclosure. Although Stairs testified that Nichols ceased paying rent after foreclosure in March 1992, Nichols testified that he did not receive notice of the foreclosure until mid-May 1992, and that he began removing his personal belongs from the foreclosed property afterwards.
Rosa Dunn testified that, based upon her observation regarding active utility service, she concluded that Nichols was occupying the property during the first week of June 1992, but that later that month, the property appeared to be abandoned, so Dunn began cleaning it. Dunn provided testimony that, based on over 34 years of experience, it observed the things that usually indicated abandonment, including discontinued utilities, overgrown grass and weeds, the presence of scattered trash and debris, and the absence of furniture, clothing, and dishes. A locksmith testified that when he was on the premises, he observed nothing to indicate that the property was occupied. A utility representative testified that although Nichols had utility service connected at a new residence *Page 91 
in mid-May, Nichols did not have the utility service disconnected at the foreclosed property until June 12, 1992. A VA representative testified that the VA never received any rent payments from Nichols, and it is undisputed that the fair rental value was $350 per month. A police officer testified that Nichols had filed a report, alleging that several expensive items previously located at the property were missing.
Although the VA's brief raises several arguments, it is well-settled that a party receiving a verdict and judgment in its favor can bring an appeal only to question the amount of damages. DeBardeleben v. Tynes, 290 Ala. 263, 276 So.2d 126
(1973); Prescott v. Fletcher, 379 So.2d 333
(Ala.Civ.App. 1979).
Jury verdicts are presumed to be correct, and this presumption is further strengthened when the trial court has denied a motion for new trial. Ashbee v. Brock, 510 So.2d 214
(Ala. 1987); Kinard v. Davis, 594 So.2d 157
(Ala.Civ.App. 1992); Posey v. McCray, 594 So.2d 152 (Ala.Civ.App. 1992). Appellate courts must view the evidence most favorably to the prevailing party, and a judgment based on a verdict may not be reversed on appeal unless it is plainly and palpably wrong.Ashbee, 510 So.2d 214. A court hesitates to use its inherent power to set aside a jury verdict, because the right to trial by jury is a most precious right. See O'Daniels v. Bates,456 So.2d 807 (Ala.Civ.App. 1984). Yet, the trial court has a duty to grant a new trial for inadequate or excessive damages if the verdict is clearly unjust. Stinson v. Acme Propane Gas Co.,391 So.2d 659 (Ala. 1980). Furthermore, a jury is not at liberty to disregard or ignore undisputed testimony or evidence. Jones v.Butts, 646 So.2d 104 (Ala.Civ.App. 1994). "The verdict must be consistent and the damages awarded must be reasonably proportionate to the injury." Stinson, 391 So.2d at 661. Further, if a verdict for damages significantly varies from the uncontradicted opinion of value, it cannot stand. O'Daniels,456 So.2d 807. Damages that do not sufficiently compensate for proven losses or damage are considered to be inadequate.Kinard, 594 So.2d 157.
Once the jury found in favor of the VA on its claim that Nichols was liable for unlawful use and occupation of the VA's property, the jury was required to rely on the uncontradicted evidence regarding the fair rental value of the property for the time occupied. While a jury is afforded discretion in its award of damages, it is not free to return arbitrary or improper verdicts based upon extraneous matters, and its verdict must be supported by the evidence and based on the applicable law. Stinson, 391 So.2d 659; Alpha Coal Co. v.National Cement Co., 420 So.2d 275 (Ala.Civ.App. 1982). The VA was entitled to recover an amount at least equal to its uncontradicted damages. See Jones, 646 So.2d 104.
It appears of record that at the hearing on the post-judgment motion, even Nichols's attorney agreed that the verdict and judgment may be reversible error:
 "[Nichols's attorney]: Your Honor, first of all I want to address one thing in his motion that the [VA] is concerned about, and that is the inadequacy of damages that would have been awarded to the VA, it being set by the jury at $1. I want it abundantly clear that we agree that that may be reversible error unless this Court entertains that."
The trial court's judgment denying the motion for new trial based upon the inadequacy of damages is reversible error.Kinard, 594 So.2d 157.
The VA and Dunn also challenge the inconsistency of the verdicts, specifically arguing that the jury's verdict favoring Nichols on his counterclaim and awarding compensatory and punitive damages is inconsistent with the verdict favoring the VA on its use and occupation claim.
In his counterclaim, Nichols alleged that Dunn, acting individually and on behalf of the VA, converted the leased premises occupied by Nichols "by exercising dominion and control over said property in exclusion or defiance of [Nichols's] rights." Nichols also alleged that Dunn converted some of his personal property. Inherent in the jury's finding for the VA on its claim against Nichols was the finding that Nichols was in unlawful possession of the VA's property without just cause or lawful right, and without *Page 92 
VA's permission. To first find that the VA was legally entitled to possession of the property, and then to find on Nichols's counterclaim that the VA, via its agent, had converted the same property by entering it to do what was necessary to possess it, is not consistent.
Simply, Dunn, as VA's agent, had lawful right to enter the property upon apparent abandonment, to secure the property for the VA. After abandonment, Dunn could take the necessary steps to possess the property and prevent its destruction. The record indicates that Dunn started monitoring the property in March 1992, after foreclosure, and only acted to secure the property after it appeared to have been abandoned in late June 1992.
The record also contains testimony regarding Nichols's claim for disposition of his personal belongings. Rosa Dunn testified that "[i]t looked as if somebody had moved out and left just trash and garbage." James Dunn testified that he "looked around, and it was typical. It looked like somebody had left the house and this is what they left. . . . These foreclosed houses, most of them have the same type stuff in them." Additionally, the locksmith testified that "the part of the house that I saw was completely bare and I did not see one thing." It is noteworthy that Nichols did not offer or produce any receipts, warranty cards, or any other documentation indicating his ownership of any of the items that he claimed Dunn had wrongfully removed from the house. A jury verdict that is inconsistent and contradictory "should be set aside and a new trial granted." Owens v. Lucas, 604 So.2d 389, 391
(Ala. 1992). It is my opinion that the verdicts on the conflicting claims are inconsistent, and therefore, it was error for the trial court to deny a new trial. Accordingly, I must respectfully dissent.
CRAWLEY, J., concurs.